**42 P.(2d) 206**

## ALBUQUERQUE LODGE, NO. 461, B. P. O. E., v. TIERNEY, County Treasurer and Collector.

### No. 3982.

Supreme Court of New Mexico.
March 11, 1935.

Hon. E. K. Neumann, Atty. Gen., J. D. Mell, Sp. Tax Atty., of Santa Fé, and A. R. Kool, Asst. Sp. Tax Atty., of Albuquerque, for appellant.

Marron & Wood, of Albuquerque, for appellee.

SADLER, Chief Justice.

This is an appeal from a judgment of the district court of Bernalillo county sustaining appellee's claim of exemption from taxation on its property for the years of 1931 and 1932. The appellant is John J. Tierney, as county treasurer of Bernalillo county, who appeared as defendant below.. The appellee is Albuquerque Lodge, No. 461, B. P. O. E., a corporation, which was plaintiff below. We shall here refer to the parties either as Elks Lodge and county treasurer or by their formal designations as plaintiff and defendant at the trial.

It appears from the allegations of the complaint that by direction of the state tax commission the county assessor had placed the property involved upon the tax rolls of Bernalillo county for the years of 1931 and 1932, and the county treasurer, in due performance of his duties as collector, was demanding payment of the taxes due under the assessments so made. The Elks Lodge instituted this suit to restrain and enjoin such collection, basing its right to the relief prayed for upon the provision of article 8, §3, of the state Constitution exempting, among other things, "all property used for educational or charitable purposes."

The issue between the parties as disclosed by the pleadings was rather narrow. Paragraph 2 of the complaint alleged: "That the said Elks Home and property is devoted exclusively to the use of educational, charitable and benevolent purposes, and the entire income from the building and the dues of members are devoted exclusively to said purposes, and is not otherwise used with a view to or produces any pecuniary profit to the lodge or any member thereof."

Responding to this paragraph of the complaint, the answer: "Denies that the entire income from the building is devoted exclusively to said purposes, and denies that it is not otherwise used with a view to pecuniary profit to the Lodge."

Nor is there any serious disagreement between counsel as to the nature of plaintiff organization or its general objects as disclosed by the record. Quoting from appellee's statement of facts as found in its brief, we find

the following language, to wit: "Appellant, upon page three of their brief, summarize the facts as follows: 'The Elks Lodge is used for the purpose of conducting the business of the Elks' organization for their comfort and convenience, and for social, charitable and benevolent purposes. It issues no capital stock, declares no dividends and its members derive no pecuniary profit from its operation, nor are they guaranteed benefits of any kind. It derives its revenues from dues of $12.00 per annum from each of its members, and largely, from its rentals of rooms in the building.' Adding the word 'educational' to its purposes, the above statement fairly summarizes the appellee's general objects. Some additional facts necessary to be noticed will be stated in the argument section of this brief, and we deem it unnecessary to separately state them here."

The plaintiff was incorporated as Albuquerque Lodge, No. 461, B. P. O. E., in 1902. Shortly thereafter it acquired the original site of the old San Felipe Hotel which had recently burned, consisting of property with a frontage of 125 feet at the corner of Fifth and Gold streets in the city of Albuquerque. Subsequently the lodge purchased a frontage of 125 feet adjoining this property on the west. It is the liability to taxation of this property with improvements subsequently erected and now remaining that forms the subject-matter of the present suit.

The first construction embraced a theater, lodge rooms, ballroom, banquet hall and buffet. It so remained until 1914, or thereabouts, when changes were made involving abandonment of the use of any part of the building for theater purposes and its use confined to that of a home for the lodge with rooms for such members as might avail themselves of the privilege of occupying them and as the place where the various activities of the lodge were administered.

So it continued until 1920, when the building burned. It was rebuilt into the present structure. Now and at all times material to this inquiry the building contains, and has contained, a lounge and reading room, lodge room, and a room devoted to pool, billiards, and cards. In addition, there are rooms on the second, third, and fourth floors rented to members and a few also to prospective members. A substantial part of the real estate sought to be subjected to taxation, soon after its purchase, was converted into a small public park and lounging place open to free use of the public, and has been devoted to such use ever since.

It appears the plaintiff has a total of 68 rooms on its second, third, and fourth floors. They are provided as a home for members. They are not open to the public generally, and the plaintiff neither advertises for nor seeks roomers other than members or prospective members. Such nonmembers as are accepted as roomers are charged a higher rate and are received with a view to ultimate membership, in which thought the lodge has been very successful. The rental of rooms to nonmembers is insignificant when compared to the total number of roomers. At the time of trial there were only four nonmembers occupying rooms; there had been five, but one of them became an Elk at the last meeting preceding the trial.

The plaintiff produced proof of the charitable and educational phases of its work, and, without going into detail as to the character of this evidence, which is rather weighty, particularly as to its charities, our examination of the record convinces us the plaintiff has fairly stated in its brief the theory of the defense, as follows: "(c) No question was made below by appellant of the nature and character of appellee as an educational and charitable corporation. The theory on which the case was tried below was that, conceding such nature and character, and substantial use of its property for the purpose, it forfeited the right to exemption when it constructed rooms to a substantial extent in its house to be let to members for a consideration, and realized a substantial part of its income from the rooms."

The plaintiff introduced in evidence portions of the proceedings, including the judgment in a tax suit against plaintiff for 1905 taxes on the same real estate here involved. The suit was instituted during territorial days, and, pending several years, was decided after statehood. Counsel for plaintiff urged this judgment allowing the exemption claimed as res adjudicata, not of its right to exemption for 1931 and 1932 taxes, but of its character as a charitable and educational institution. The plaintiff having prevailed below in the present suit, it renews such contention before us as one ground in support of the judgment rendered.

The defendant elected to put in no evidence and rested his case upon the record made in the course of the presentation of plaintiff's case. The trial court made no specific findings, nor did either party request any; the judgment entered merely reciting that the court "finds the issues for the plaintiff, and that its property described in the complaint is exempt from taxation under the constitutional provision." The judgment so decreed.

■ The trial judge could see no material distinction between this claim of exemption and that sustained by us in Temple Lodge No. 6, A. F. & A. M. v. Tierney, 37 N. M. 178, 20 P.(2d) 280, 284, referred to by him in his comment to follow as the "Masonic case." At the conclusion of the argument of counsel below, the trial judge said: "I have agreed with nearly everything the State's counsel have said and I have disagreed with nearly everything plaintiff's counsel has said, but the thing for me to decide is whether there is any material distinction between this case and the Masonic case, which has already settled most of the things that counsel are talking about. I don't think the Masons should be exempt; I don't think either one of them are using their property primarily for educational or charitable purposes, but that question has been definitely decided, it seems to me, by the Supreme Court, so that the whole question for me is whether there is any material distinction between this case and the Masonic case; and, frankly, I am unable to find any, that is any distinction, any material distinction, between the cases. There is a difference in degree, perhaps, in the manner of the use of the building, but it seems to me the decision in the Masonic case applies with equal force here. For these reasons, the relief sought in the complaint will be granted."

A careful reading of the record and briefs inclines us to the view of the trial judge that there is no material distinction between this and the Temple Lodge Case. It there appeared that the exemption claimant received revenue in the nature of rental from various Masonic bodies for the use of certain rooms in the building in question as meeting places for such organizations. Likewise in that case we quoted the opinion of the late Attorney General Frank Clancy holding that the claim of exemption of St. Joseph's Sanatorium of Silver City for its property as devoted to charitable uses was not to be denied merely because pay patients were received. He said: "The exemption would extend to any hospital which is used for charitable purposes even though at the same time accommodations may be provided for patients who are able and willing to pay for care and treatment."

We said: "Authority is not wanting to support this view, as will appear from a reading of the decisions herein cited."

As illustrative of the class of cases we had in mind in the statement just quoted, see New England Sanitarium v. Stoneham, 205 Mass. 335, 91 N. E. 385.

The distinction urged between this case and the Temple Lodge Case is that here the revenue derived from rental of rooms forms so large a part of total income of the lodge that the case is brought within a principle excepted from our decision in the Temple Lodge Case in the following language, to wit: "Whether the exemption for property, used for charitable purposes, includes property leased if the rentals be so used, is a question not necessary to decide here. Such was the question in La Fontaine Lodge v. Eviston, 71 Ind. App. 445, 123 N. E. 468."

It is pointed out that for the year 1931 dues from members produced only $7,200, whereas rental of rooms brought in $17,048. About $2,500 was paid out in cash for charities; the remainder being consumed in maintaining the lodge and its property. Of the sum devoted in cash to charities, about 25 per cent. only was to its own members.

We do not consider the facts of this case of a class with those disclosed in La Fontaine Lodge v. Eviston, 71 Ind. App. 445, 123 N. E. 468. There a fraternal cemetery association owned a three-story brick building rented for commercial purposes, no part of which was used for charitable purposes; the claim to exemption being predicated solely upon the fact that the income from the building was devoted exclusively to perpetual care of the cemetery.

That is a quite different situation from the present case. The main purpose and use of the building is as a home for the lodge and a center from which emanate and are carried on the charitable and benevolent purposes disclosed by the record. The plaintiff is not, as defendant contends, running a hotel or rooming or lodging house in the accepted meaning of those terms. True, it does provide rooms for its members for a return in the nature of rental, cf. Dewar v. Minneapolis Lodge, No. 44, B. P. O. E., 155 Minn. 98, 192 N. W. 358, 32 A. L. R. 1012, thus enabling it to have an adequate home with lodge and

recreational rooms, a meeting place for the fraternity, the better to carry on the cardinal purposes of the order. Indeed, it appears in the record that, but for the revenue received from members who occupy rooms in the home, the lodge would be unable to own and maintain a home of even one or two stories as a meeting place and the center of its manifold activities.

But we do not consider the use to which a portion of the building is put as rooms for members overshadows or submerges the primary use of the property for charitable purposes. Thus the case is not brought within the principle that property is subject to taxation even though its entire income may be devoted to charitable or educational uses. Cf. State v. Board of Trustees of Town of Las Vegas, 28 N. M. 237, 210 P. 101. See also, Gymnastic Ass'n of South Side of Milwaukee v. City of Milwaukee, 129 Wis. 429, 109 N. W. 109.

Salt Lake Lodge No. 85, B. P. O. E. v. Groesbeck, 40 Utah, 1, 120 P. 192, 196, Ann. Cas. 1914C, 940, and annotation, was a case where the constitutional provision (article 13, § 3) involved exempted lots with the buildings thereon "used exclusively for * * * charitable purposes." The Elks Lodge maintained a home in which, as a source of revenue for maintaining the home and carrying on its charitable purposes, it sold spirituous, vinous, and malt liquors, cigars, and luncheon to members only, for profit. Contentions similar to those urged here were made but not sustained, even though the constitutional provision in question was much more restrictive

than ours. The court, among other things, said:

"As stated by counsel for appellant in their brief, 'to maintain the organization it is necessary to have officers and committees, and to hold meetings, even though all of these may not be immediately concerned in dispensing charity. It must have a permanent meeting place, and in the building used for this purpose it has rooms for accommodating its membership, places where they may meet, not only to talk over lodge business concerned with the dispensation of charity, but for social purposes, to partake of refreshments, or to indulge in a game of cards or billiards. It is all a method of holding the members together, of solidifying the organization, to the end that charitable aims of the organization may be more effectively carried out.' That is, the maintenance and occupation of the building and the use made of it as a whole by the organization tends directly to promote and further the purposes, and to carry out the objects for which the organization was created. And the agreed statement of facts shows that the appellant, during the five years next preceding the year 1909, dispensed for charitable purposes annually the sum of $1,757.79, and during the year 1909 the sum of $3,757.79. The court found that the sum of $1,757.79 only was distributed for charitable purposes during the year 1909. The amount distributed is not, however, of controlling importance in the case. The important question is, Was and is the property, in the meaning of the law, used exclusively for charitable purposes? This question, we think, must be answered in the affirmative.

The contention made by respondent that the selling of liquors and cigars, and the furnishing of refreshments, to the members of the organization, under the circumstances and conditions as found by the court, deprives the property of the exemption, we think, under the great weight of authority, cannot be maintained. We think it conclusively appears that neither the occupation nor use of the building, or any part of it, was for the purpose of deriving profit or income, and that the benefit derived in the form of gain from the sale of liquors, cigars, and refreshments to the members is a mere incident to the use made of the building in promoting 'good fellowship' among the members of the organization and in dispensing charity 'in the general relief of the distress of the human family, not only to its members and their families, but also to the public at large.' "

The Groesbeck Case from Utah was cited by us in the Temple Lodge Case as supporting the claim of exemption there sustained.

In People v. Rockford Lodge, No. 64, B. P. O. E., 348 Ill. 528, 181 N. E. 432, 433, the Supreme Court of Illinois declined to follow the Groesbeck Case, resting its decision rather upon certain cases which it considered opposed thereto, saying: "The payment of taxes is necessary to the maintenance of government. The Constitution and the law have provided that property devoted to certain uses may, upon a compliance with terms fixed by the law, be exempt from taxation. A strict compliance with these terms is required by law, and in this case the terms have not been complied with. The county court therefore properly overruled the objection of the appellant. This judgment was in accord with the conclusions reached in the following decisions, among others: Boston Lodge v. City of Boston, 217 Mass. 176, 104 N. E. 453; Trustees of Green Bay Lodge v. City of Green Bay, 122 Wis. 452, 100 N. W. 837, 106 Am. St. Rep. 984, and St. Louis Lodge v. Koeln, 262 Mo. 444, 171 S. W. 329, L. R. A. 1915C, 694, Ann. Cas. 1916E, 984. In Horton v. Colorado Springs Masonic Building Society, 64 Colo. 529, 173 P. 61, L. R. A. 1918E, 966, and Salt Lake Lodge v. Groesbeck, 40 Utah, 1, 120 P. 192, Ann. Cas. 1914C, 940, the courts arrived at the opposite conclusion, though in each case there was a strong dissenting opinion, with which we agree."

The cases cited by the Illinois court as supporting its conclusion, as noted by us in the Temple Lodge Case, are "fairly distinguishable" on their facts from the latter case and distinguishable on the same ground in their applicability to the present case. But, aside from this, the reversal of positions on the question of exemption accomplished almost simultaneously by Illinois and Nebraska in People v. Dixon Masonic Bldg. Ass'n, 348 Ill. 593, 181 N. E. 434, and Ancient and A. S. R. of Freemasonry v. Board of County Com'rs, 122 Neb. 586, 241 N. W. 93, 81 A. L. R. 1166, respectively, as noted in the Temple Lodge Case, classifies Illinois definitely with those jurisdictions demanding exclusive use of the property for educational or charitable purposes to warrant the exemption, a contention we declined to uphold in the Temple Lodge Case.

It is also the case here, as in the Temple Lodge Case, that for many years, so far as the record discloses, ever since the suit involving the 1905 taxes, the plaintiff has claimed and received exemption on its property as properly allowable under territorial statutes and later under the constitution. Tacitly, at least, counsel seem to agree that it has been the uniform practice of the taxing authorities to accord the claim of exemption, a departmental interpretation of the exemption clause in the Constitution entitled to persuasive weight, as we previously have held.

We do not overlook our decision in Albuquerque Alumnæ Ass'n v. Tierney, 37 N. M. 156, 20 P.(2d) 267, denying appellant's claim of exemption for its property as "property * * * used for educational purposes." On rehearing we there said: "It might be inferred that we deemed this a case of an educational use, overshadowed by other primary and dominant uses. In fact, it is our view that this record presents no use at all which should be deemed educational within the meaning of the Constitution."

Nor do we here base our decision upon the view that plaintiff's property is used for educational purposes. We do not understand the trial court to have done so. Unquestionably the record discloses that work educational in character is fostered by the lodge and a partial use of the property for such purpose is manifest. However, the use of the property for charitable purposes, as disclosed by the record before us, so overshadows any other use that we have no hesitancy in saying,

within the principles laid down in the Temple Lodge Case, that plaintiff is entitled to the exemption claimed.

■ But here, as there, we confine our decision to the facts before us, not making it a precedent even for other cases involving properties of the B. P. O. E. except as the proven facts disclose a use similar to that here shown. It is the use of property, not the declared objects and purposes of its owner, which determines the right to exemption. Theta Xi Bldg. Ass'n v. Board of Review, 217 Iowa, 1181, 251 N. W. 76.

It follows from what we have said that the judgment appealed from must be affirmed. It is so ordered.

HUDSPETH, BICKLEY, and WATSON, JJ., concur.

ZINN, J., did not participate.