**48 P.(2d) 777**

**CHURCH OF THE HOLY FAITH, Inc., v. STATE TAX COMMISSION et al.**

No. 4034.

Supreme Court of New Mexico.

July 15, 1935.

Rehearing Denied Sept. 24, 1935.

Charles B. Barker, of Santa Fe, for appellant.

J. D. Mell, Sp. Tax Atty., and David Chavez, Jr., Dist. Atty., both of Santa Fe, and E. K. Neumann, Atty. Gen., and Quincy D. Adams, Asst. Atty. Gen., for appellees.

BICKLEY, Justice.

The appellant is a corporation organized for religious purposes under the provisions of an act authorizing the organization of corporations for religious, benevolent, charitable, scientific, or literary purposes, or for the establishment of colleges, academies, seminaries, churches, or libraries. Section 32-506 et seq., Comp. Stats. 1929 (Laws 1880, c. 2).

All of its funds are devoted to religious and charitable purposes through the religious and charitable activities of the parish church.

The officers of the state seeking to subject certain property of appellant to a tax are met with the assertion by appellant that under the provisions of section 3 of article 8 of the State Constitution the said property is exempt from taxation. The constitutional provision is found in article 8, § 3, as follows: "The property of the United States, the state and all counties, towns, cities and school districts, and other municipal corporations, public libraries, community ditches and all laterals thereof, all church property, all property used for educational or charitable purposes, all cemeteries not used or held for private or corporate profit, and all bonds of the state of New Mexico, and of the counties, municipalities and districts thereof shall be exempt from taxation."

The property involved is a dwelling house and the lot upon which it is situated, acquired by devise, and is rented by appellant and the proceeds turned over to the parish church and used as other funds

of the corporation are used, that is, for religious and charitable purposes.

There is no claim that the property itself as the source of the rentals is used for religious or charitable purposes, in the sense that it is used as a house of worship, or as a hospital, infirmary, or other similar charities.

The first thing we are required to determine is the meaning of the phrase "all church property."

Among some ten definitions of "church" given by the lexicographers, two have gotten into the law books generally. One is: "A society of persons who profess the Christian religion." The other: "The place where such persons regularly assemble for worship."

Appellant claims the benefit of the first definition and asserts that the phrase "all church property" means "all property of churches," or "all property owned by churches." Appellees resist this conception. Appellant also claims the benefit of other provisions of the section on the ground that the property involved is used for religious and charitable purposes. This is also resisted.

A similar controversy arose in Chicago Theological Seminary v. Illinois, 188 U. S. 662, 23 S. Ct. 386, 387, 47 L. Ed. 641, affirming the decision of the Illinois Supreme Court reported in 189 Ill. 439, 59 N. E. 977, which followed People v. Chicago Theological Seminary, 174 Ill. 177, 51 N. E. 198.

The plaintiff in error claimed exemption under its charter entitled: "An Act to Incorporate the Chicago Theological Seminary." That corporation had power "to acquire, hold and convey property, real and personal." Its object was declared to be "to furnish instruction and the means of education to young men preparing for the gospel ministry." Section 5 provided: "That the property, of whatever kind or description, belonging or appertaining to said seminary, shall be forever free and exempt from all taxation for all purposes whatsoever."

Section 6 provided: "This Act * * * shall be construed liberally in all courts for the purposes therein expressed."

The Supreme Court of Illinois had held that the provision granting the exemption from taxation in section 5 referred only to property used in connection with the seminary and did not include other property which might be owned, rented, or held by the seminary as an investment, although the income thereof was used solely for school purposes. The pieces of real estate upon which the taxes were levied were acquired by the plaintiff in error by gift or purchase and were held by it to promote the objects for which it was incorporated, and the rentals received were used for those purposes, although the prop-

erty was not used in immediate connection with the seminary. The Supreme Court of the United States, in affirming the decision of the Illinois Supreme Court, said: "The rule is that, in claims for exemption from taxation under legislative authority, the exemption must be plainly and unmistakably granted; It cannot exist by implication only; a doubt is fatal to the claim."

The court continued:

"The reasoning of the supreme court of Illinois (174 Ill. 177, 51 N. E. 198), in refusing the exemption claimed, so far as relates to the property not connected with the seminary, is best stated in the language of the opinion of that court. After stating the rule of construction, as above mentioned, the court said ([174 Ill.] p. 181 [51 N. E.] p. 199):

" 'If, however, taking the express words of the act, and without extending their meaning by implication, they may be held to include all property belonging or appertaining to the "seminary" mentioned in the 2d section, or to include all the property belonging or appertaining to the corporation, and there is reasonable ground for doubt which was intended by the legislature, that doubt must be resolved in favor of the state. In other words, if the language is capable of a broad or more restricted meaning, the latter must be adopted. The 2d section of the charter mentioning certain property to be located in or near the city of Chicago, and which is denominated "the seminary," we think the words in the 5th section, "said seminary," refer to that particular property, and to so hold seems to do no more than to give the language of the two sections their literal and ordinarily understood meaning. To say, as is contended by appellee, that "said seminary" was intended to mean the corporation is to extend the meaning of those words by implication, which is not permissible.

" 'It is said that the only entity mentioned in the charter capable of owning property is the corporation, and therefore it could not have been intended that property belonging or appertaining to the seminary was meant by § 5. We think this position is based upon a too limited meaning of the words "belonging or appertaining," as here used. Of course, if the language of § 5 had been that the property, of whatever kind or description, owned by the said seminary shall be forever free from all taxation, etc., or if, as counsel seem to assume, the words "belonging or appertaining" here necessarily meant ownership of the property, then there would be force in this argument of counsel. It is undoubtedly true that the word "belonging" may mean ownership, and very often does. But that is not its only meaning. Webster's International Dictionary defines it: "2. That which is connected

with a principal or greater thing; an appendage, an appurtenance." He also defines the word "pertain" as meaning "to belong or pertain, whether by right of nature, appointment, or custom; to relate, as 'things pertaining to life.'" Manifestly, the purpose of § 5 was to exempt property owned by the corporation, but it does not follow that the intention was to include in that exemption all property owned by it used for purposes of the school.'

"We think there is force in this reasoning, and we are disposed to concur in the result arrived at.

"It is contended by counsel for plaintiff in error that the words 'said seminary,' contained in § 5 of the charter, referred to the corporation created by the act, and not to the school buildings and grounds, and that, therefore, the exemption necessarily exempted from taxation all the property against which the judgments below were rendered.

"Here are two different constructions of the exemption clause, each of which might be maintained with some plausibility. That view which limits the range of the exemption to property used in immediate connection with the seminary might seem to many to be the correct one, while in the opinion of others the broader claim of total exemption would be the best founded. The judges of the supreme court of Illinois have unanimously taken the former view, while counsel for the plaintiff in error very strongly and very ably has taken and maintained the other. We can ourselves see that a construction either way would not be clearly erroneous, or, at any rate, either construction would not be so obviously erroneous as to leave no doubt upon the question. In such cases we think the rule as to the construction of statutes of exemption from taxation should be applied, and as there may be room for reasonable doubt whether a total or only a partial exemption was meant, the partial exemption should alone be recognized."

To say the least, there is as much or more ambiguity in the phrase "all church property" read with the context as there was in the language in the Illinois statute. There are many other decisions to the same effect as those cited from Illinois and the Supreme Court of the United States.

Mr. Cooley in his work on Taxation (4th Ed.) at section 680, treats of "the importance of use of property as against ownership." He says:

"A right to exemption from taxation may be granted in such terms as to include all the property of the corporation or association, without regard to the use to which it is put, unless the constitution expressly limits the right to exempt according to the use made of the property. If statutes were read literally, a statute exempting 'all' property 'owned' or 'held' or 'belonging to' certain institutions or persons,

without qualifying words would be held to include all property so owned regardless of its use in connection with the business of the owner or otherwise; and it is often held that statutes using one or more of such terms and not expressly limiting the exemption to property used for certain purposes, included all property so owned without regard to its use. * * * On the other hand, there is authority in favor of limiting exemptions, even when on their face they include all property owned by certain institutions, to property used for the purposes thereof, especially in case of exemption or commutation of railroad companies, on the theory that the intention to exempt all the property is not clear. Generally such a grant is in express terms limited to property which is held by the corporation or association for the purposes for which it was created or organized; and, *even when there is no such express limitation,* (italics ours) these cases hold that a grant of exemption from taxation should not be construed as applying to property of a corporation or association which is not necessary for or used in the business or object for which it was created. * * * And it has been held that an exemption of property from taxation, although in general terms, does not apply to property held, not for use in carrying on its business, but for the purpose of selling or leasing the same, or for mere convenience; that an exemption of manu-facturing corporations from taxation does not exempt property of such a corporation not used nor invested in its manufacturing; and that an exemption of the property of a canal company does not exempt property used merely as the residence of its superintendent. * * *

"If the exemption depends on the use made of the property, rather than the ownership, the title to the property is immaterial, i. e., the title need not be in the user claiming the exemption. In such a case it is the use and not the ownership which determines the right to the exemption. It follows that the owner may claim the exemption although the use is by another."

The following are excerpts from the note to the Cooley text:

"It has been frequently decided that a general exemption of the property of a corporation from taxation is to be construed as referring only to the property held for the transaction of the business of the company. Ford v. Delta & Pine Land Co., 164 U. S. 662, 17 S. Ct. 230, 41 L. Ed. 590.

"Even when ownership is all that is required by statute, the statute is often construed as including only property used in carrying out the purposes for the protection of which the exemption was granted." Willard v. Pike, 59 Vt. 202, 218, 9 A. 907.

"Ownership 'refers only to property used in immediate connection with the seminary, and does not include other property which may be owned, rented, or held by the said seminary as an investment, even though the income thereof is used solely for school purposes.' "

"Even where a charter of a religious school expressly exempted 'the property, of whatever kind or description, belonging or appertaining to' it, the exemption was held not to include lands yielding 'rents used for the support of the school."

We proceed then to an examination of the provision of our Constitution with such aids as we may lay hold of to ascertain the reasonable and probable intent of the framers of the Constitution.

"Exemption statutes may be roughly classified as belonging to one of three groups, viz.: (1) Those making ownership of the property by a certain institution or class of people the test; (2) Those making the particular use of the property rather than the ownership the test; and (3) Those making both ownership and use the test. Especially is this classification important in connection with exemption of charitable, religious and educational institutions. If ownership is the test, then the use is often held immaterial. If use is the test, then the ownership is generally immaterial." Cooley, Taxation (4th Ed.) § 690.

In Temple Lodge No. 6, A. F. & A. M., v. Tierney, 37 N. M. 178, 20 P.(2d) 280, 283, upon a comparison of section 141-110, Comp. Stats. 1929, which dates back as far as all features here important to Laws 1882, c. 62, § 3, which governed such exemptions in Territorial days, with the constitutional provision now under consideration, we said as to property "used for educational and charitable purposes": "While both use and ownership were formerly requisite, use alone now suffices."

■ The constitutional provision before us reads: "The property of the United States, the state and all counties, towns, cities and school districts, and other municipal corporations * * * shall be exempt from taxation." Article 8, § 3.

Here ownership seems plainly the sole test. Elsewhere in the section "all property used for educational or charitable purposes, all cemeteries not used or held for private or corporate profit * * * shall be exempt from taxation." Here use seems to be the sole test. The section also contains the phrase, "public libraries, community ditches and all laterals thereof, all church property," are exempt from taxation. As to these three kinds of property, no specific qualifying words are used which will serve to pigeonhole them into either the ownership or use classifications. It is at once suggested that ownership by the United States, state, county, town, city, school district, or other municipal corpora-

tion is not necessary to constitute a library a public library. The nature of the use would seem to be the determining factor. If there could not be a public library unless it were owned by the state or a legal subdivision thereof, such as a county, town, city, or school district, then there would have been no need of mentioning them specially because they would have been exempt under the first clause where ownership in the public is all sufficient to afford the exemption. As to "community ditches and all laterals thereof," we sense the only instance of a concurrence possibly of ownership and use as requisites. Perhaps these words express the meaning conveyed by the supplanted statute when it declared "irrigating ditches, canals and flumes *belonging to communities* and *used* exclusively for irrigating lands, without any charge or compensation for the same or for the water thereof, except the necessary work and charges to keep the same in repair."

There would seem to be a logic in making ownership the test as to exemptions of property *of* the United States, the state, and all counties, towns, cities, and school districts and other municipal corporations. As to the property of the United States, the statement is little more than a declaration of inability of one sovereign to tax another related sovereign. For the state to tax its own property would simply be taking money out of one pocket and putting it into another. The county, town, cities, and school districts and other municipal corporations being merely subdivisions of the state, performing under powers delegated to them by the state some of the purposes of state government, it would seem illogical to embarrass the performance of such duties by placing tax burdens upon these state agencies, or, in other words, imposing in effect taxes upon itself. These are the only instances where a specific word appropriate to indicate ownership as the test is used. "Of" indicates the relationship of possession. Webster's International Dictionary. The word has been held equivalent to *"belonging to."* Bouvier.

Likewise, there are no specific words indicating use as the test applied to "public libraries, community ditches * * * all church property." That does not mean that neither use nor ownership are requisite. In other words, no new classification was created, and public libraries, community ditches, and church property fall either into one or the other or both of the classifications described by Mr. Cooley.

We must credit the Constitution makers with the knowledge that it was the territorial policy evinced in the act of 1880 which remains in force as Comp. Stat. 1929, § 32-508, to extend to corporations organized for religious purposes the priv-

ilege and power to "take *such* real and personal property as is necessary or proper for the furtherance of its objects" (purposes) and with the knowledge that by the statute (section 32-506, Comp. Stat. 1929), authorizing such incorporations, the purpose of establishing "churches" was one of the religious aims specially mentioned. That is to say "churches" in that statute is used in a different sense than as being the corporate entity. The language is, "may organize a corporation for religious * * * purposes, or for the establishment of * * * churches," showing that the establishment of churches is one of the purposes of the corporation and not the corporation itself. And, also, that the grant of power therein to take real and personal property was restricted to such property as was "necessary or proper for the furtherance of its objects [purposes]."

We assume they were familiar with the exemption statute passed shortly thereafter (1882) which exempted from taxation "the grounds, buildings, books, papers and apparatus of * * * religious institutions and societies, when the property of said institutions and societies shall be devoted exclusively to the appropriate objects of such institutions."

In view of the foregoing, it seems likely that if the framers of the Constitution had intended to depart entirely from use as a test and make ownership by religious institutions and societies the sole test of whether church property was exempt, they would have used words appropriate to manifest such intention by saying that "all property of churches" or all property "belonging to churches," in the sense contended for by appellant and as heretofore defined, that is, that a church is "a society of persons who profess the Christian religion."

They must be credited with knowledge that corporations were entitled to own only such property as is necessary or proper to enable them to carry out the objects of their creation, and if they had intended to depart from the policy well known to the law to restrict property holdings of corporations to such property as is necessary to carry out the objects of its creation, they would have said so in plain and unmistakable language.

Even if it were held that "church property" meant property *of* the churches, we would be required to inquire whether even in the face of the word "all" we must not hold that it was the intent to consider both ownership and use in determining whether the exemption is limited to property ordinarily understood to be necessary and proper for religious purposes. See Chicago Theological Seminary v. Illinois, supra, and Gunter v. Jackson, 130 Miss. 637, 94 So. 844.

The framers of the Constitution were not without models in the Constitutions

and statutes of other states. In most, they would have found use for religious worship or purposes to be the sole test. They would have found a very few provisions making ownership the sole test. It would be found that the Constitution of only one other state employs phraseology similar to ours, namely, Minnesota, as follows: "All churches, church property and houses of worship, * * * shall be exempt from taxation." Article 9, § 1.

Assuming that the framers of the Constitution had the Minnesota Constitution before them as a model, the phrase "all church property" was likely thought by them to cover "all churches, church property and houses of worship," because it would seem plain that churches and houses of worship are church property, and therefore surplus language.

There seems to be a distinction between church property in the sense of property used for religious purposes and "property used for educational or charitable purposes." Aside from the proposition that religious teaching is educational, and giving "educational purposes" a broader significance, still a church as an entity may enjoy under the construction here employed, in addition to its exemption of property used for religious purposes, property which it uses for "educational or charitable purposes." So that, for example, if a church as an entity has established a church property, and also "colleges, acad-

emies, seminaries, libraries, hospitals," it may claim them all as exempt under the clause of the Constitution, exempting "property used for educational or charitable purposes."

The Constitution of Minnesota prior to 1906 exempted from taxation "all churches, church property used for religious purposes, and houses of worship." Const. 1857, art. 9, § 3. Under that provision it was held that a rectory or parsonage belonging to a church society and actually used as a residence of a priest or minister of the society was not exempt. See County of Ramsey v. Church of the Good Shepherd, 45 Minn. 229, 47 N. W. 783.

The Minnesota Constitution was amended in 1906 so as to eliminate the words "used for religious purposes" immediately following the words "church property." Then the question of the exemption of parsonages came again before the court under the amended constitutional provision in the case of State v. Church of Incarnation, 158 Minn. 48, 196 N. W. 802, and it was held that a parsonage owned by the church society and actually used and maintained by the society as a residence for its priest or minister free of charge or rent was exempt from taxes. That case held to that extent only, but the court does, however, indicate a rule which is applied in the case of State v. Union Congregational Church, 173 Minn. 40, 216 N. W. 326, 327, and which we think should

be applied in the case at bar. The court in the last-cited case quoted the earlier decision declaring: "The words 'used for religious purposes' have been eliminated, so that the language relating to churches is now as broad as that relating to institutions of learning."

The court in the Union Congregational Church Case then says that:

"Generally speaking, it may be said that the rule governing exemption from taxation as to the real property of educational institutions is that all property reasonably necessary for, and primarily used and devoted to, the proper purposes of the institution, and so located with reference to the main buildings or activities of the institution as to be reasonably suitable for such purposes, is exempt from taxation. * * *

"Applying the same rule to church societies, a lot and dwelling house rented to others, and not used in any way for religious or church purposes, and not shown to be intended or necessary for such use in the future, are not exempt."

The court went on to say:

"2. Counsel for defendant argues that the Constitution makes no reference to the purpose for which the property shall be used, that no limit is placed on the use of the property, and urges that the term 'church property' should be construed as if it read 'all property owned by a church corporation or religious society.' To this we are unable to agree. The connection in which the words are used does not indicate or require such a construction. The words used in the Constitution are, 'all churches, church property and houses of worship.' The words 'churches' and 'houses of worship' clearly refer to the kind of use made of the buildings. A building in the usual architectural form of a church, if used for a railway station or business house, would not be a church or a house of worship, and an ordinary business building used only for religious services would be a church or house of worship. So it is the use of the property which determines whether or not it is a church or house of worship. The term 'church property,' used in immediate connection with the words 'churches' and 'houses of worship,' readily bears the same construction that it is the use or relation of the property to the purposes and activities of the church organization which determines whether or not it is church property. That is the reasonable construction, and the one here adopted.

"The general rule is that laws and constitutional provisions exempting property from taxation are to be strictly construed. Such laws are to be given a reasonable and practical construction that will give effect to their manifest purpose, but will not be extended by construction or implication. Unless clearly so expressed and in-

tended, it is not to be assumed that the Legislature or the people intended to permit religious corporations and charitable and educational institutions to hold tax free any amount of real estate they might be able to acquire, without reference to the need or use thereof. The evil of permitting any class of corporations or societies to become tax exempt proprietors and landlords on a large scale is too well known. As said by Justice Holt in the Carleton College Case [154 Minn. 280, 191 N. W. 400]:

" 'If the church could acquire and hold free from taxes property used in business enterprises, she would depart from her true mission and become a competitor of other business concerns, a field in which she is entitled to no advantage over them.'

"The owning of city and village residence property for the purpose of renting the same and receiving income therefrom is a business enterprise engaged in by many corporations and individuals.

"Without express provision to that effect, we are not willing to hold that by the constitutional provision in question, as amended, the Legislature or the people intended to open wide the door of exemption and relieve from taxation all real estate owned by church corporations or religious societies, irrespective of the use of such property.

"A number of cases are cited from other states. Most, if not all, of these cases arose under constitutional or statutory provisions differently worded than our Constitution. In the South Dakota case (Dakota Wesleyan University v. Betts, 47 S. D. 618, 201 N. W. 524) the exemption was 'all property, both real and personal, belonging to any educational institution,' and 'all property used exclusively by and for the support of such institution.' This, of course, is a wide open provision, exempting not only all property owned by the institution, but also any property used exclusively by it for support even if owned by others.

"Other cases cited from Georgia, Tennessee, and Louisiana were under exemption laws, using such words as 'any house belonging to'; real estate 'so long as it belongs to'; and 'all property of'—all very clearly making ownership the test. Mayor, etc., of Savannah v. Solomon's Lodge, 53 Ga. 93; University of the South v. Skidmore, 87 Tenn. 155, 9 S. W. 892; New Orleans v. Poydras Orphan Asylum, 33 La. Ann. 850."

Since the language in question, "all church property," had not been theretofore employed in the constitutional exemption provision of any other state than Minnesota, we think it. not unreasonable to assume that the framers of our Constitution were familiar with it when framing section 3 of article 8 of our Constitution.

Since "churches" and "houses of worship" are manifestly "church property," the Minnesota Supreme Court still had to deal with the question of the meaning of the phrase "church property," and we think that they gave the correct answer.

■ We think the phrase "church property," as used in the section of the Constitution under consideration, means property required for the use of the church. In the field of books, if we are confronted with the expression "law books," "school books," "hymn books," we understand that the words indicate a peculiar use to which the books are put. If we see an allusion to a "grocery store" or a "drug store" or a "hardware store," we get a mental picture of the kind of store referred to without regard to ownership thereof. So when we see the expression "church property," we know at once that it is property used for religious worship and instruction.

The quid pro quo theory as a justification for exempting property from taxation where the exemption is for the promotion of religious, educational, charitable, or similar objects, deemed beneficial to the state, is frequently invoked in support of liberal construction of exemption provisions. See Temple Lodge, No. 6, A. F. & A. M., v. Tierney, supra. Taxation is the rule, exemption the exception, and it is plain that the quid pro quo theory as supporting the exception fails as to property of a church as an entity which is not necessary for or is not used to promote the object or purposes of the church. It must be supposed that the teaching and inculcating of religious ideas is beneficial to the state. This theory sought to be encouraged by exempting church property from taxation necessarily rests upon the assumption that the property of the church as a religious society will be held and used by the church for those purposes for which the church was incorporated and exists. In so far as the property of the church is not so employed, there is no quid pro quo.

■ Our construction would logically lead to a holding that buildings with land they occupy and furnishings therein, used for religious purposes, or for residence of the priests or ministers, together with adjacent land reasonably necessary for convenient use of such buildings, are exempt from taxation.

The greater the amount of property that escapes taxation, the greater the burden is upon other property holders to bear the support of the government. That alone should not deter us from adopting a construction which will give to religious societies or corporations every immunity conferred by law, but public convenience, private justice, and individual hardship should cause us to hesitate and carefully examine the provision of law which is said to confer such privilege.

We conclude that the property in question is not being used for religious purposes and therefore is not "church property," and also that said property is not being used for "charitable purposes" and is therefore subject to taxation. The fact that the rents accumulated from such property are used for religious or charitable purposes does not alter the situation. Whether the rents so used are exempted is not a question presented and as to which we express no opinion.

The judgment of the district court sustaining the defendants' (appellees') demurrer and dismissing plaintiff's complaint must be affirmed, and it is so ordered.

SADLER, C. J., and HUDSPETH, J., concur.

ZINN, Justice (dissenting).

I cannot reconcile the views of the majority with the opinion of this court in the case of Temple Lodge No. 6, A. F. & A. M., v. Tierney, 37 N. M. 178, 20 P. (2d) 280, 283. Tierney, appellee, in that case urged the very rule now relied upon by the majority in this case, and which rule was rejected. Appellee there urged the strict rule of interpretation in claims for exemptions from taxation. This court, to my mind, adopted a liberal rule of construction, or at least held that the Constitutional Convention and the people when they adopted our Constitution had extended the field or liberalized the policy of exemption. That being the pronouncement of this court, and bowing to the rule promulgated in the Temple Lodge Case, I cannot bring myself to an agreement with the majority.

By construction, the majority finds that "all church property" means property used for religious purposes. What of the house set aside for the use of the parson or rector?

In the Temple Lodge Case this court said:

"Not only did our Constitution makers depart in method and phraseology from systems of exemption common in other states; they departed considerably and significantly from the then existing territorial system, with which certainly they were familiar. The exemptions as of territorial days still appear in 1929 Comp. St. as section 141-110. Though compilers have traced its origin to the General Appropriation Act of 1891 (chapter 94, § 7), it dates back, as to all features here important, to Laws 1882, c. 62, § 3. It reads:

" '141-110. The following property shall be exempt from taxation: Property of the United States and of this state, counties, cities, towns and other municipal corporations, when devoted entirely to public use and not held for pecuniary profit; all pub-

lic libraries, the grounds, buildings, books, papers and apparatus of literary, scientific, benevolent, agricultural and religious institutions and societies, when the property of the said institutions and societies shall be devoted exclusively to the appropriate objects of such institutions and not leased or rented or otherwise used with a view to pecuniary profit; irrigating ditches, canals and flumes belonging to communities and used exclusively for irrigating lands, without any charge or compensation for the same or for the water thereof, except the necessary work and charges to keep the same in repair; and cemeteries not held and used for pecuniary profit.'

"A comparison of this with the constitutional provision which supplanted it discloses an elimination of those qualifying expressions which we are now asked to apply as if they had been retained. The elimination must have been deliberate and studious. The conclusion is natural, and not readily to be avoided, that a purpose existed to extend the field or liberalize the policy of tax exemption."

Clearly the Constitutional Convention, had they intended use and not ownership as the criterion of exemption, had clear language before them as a guide.

Formerly, "the grounds, * * * books, papers and apparatus of literary, scientific, benevolent, agricultural and religious in-

stitutions and societies" were exempt "when the property of the said institutions and societies shall be devoted exclusively to the appropriate objects of such institutions and not leased or rented or otherwise used with a view to pecuniary profit."

To my mind the departure was studied and deliberate. It was to broaden and liberalize exemptions, as this court held in the Temple Lodge Case. Now we reverse our policy in this case, and apply a strict rule.

Again examining the Temple Lodge Case, this court said:

"But appellee invokes the familiar doctrine that taxation is the rule and exemption the exception, that, accordingly, he who claims exemption must overcome a presumption, and that the provision of law invoked by appellant is to be strictly construed. That general doctrine is not strange to this court. United States Trust Co. v. Territory, 10 N. M. 416, 62 P. 987; New Mexico v. United States Trust Co., 174 U. S. 545, 19 S. Ct. 784, 43 L. Ed. 1079; Samosa v. Lopez, 19 N. M. 312, 142 P. 927; State v. Board of Trustees, 28 N. M. 237, 210 P. 101; Berger v. University of New Mexico, 28 N. M. 666, 217 P. 245; Oden Buick, Inc., v. Roehl, 36 N. M. 293, 13 P.(2d) 1093.

"But where the exemption is for the promotion of religious, educational, chari-

table, or similar objects, deemed beneficial to the state, and to afford a quid pro quo, an exception has frequently been declared. For expositions of this doctrine and collections of authority, see Horton v. Colorado Springs Bldg. Society [64 Colo. 529, 173 P. 61, L. R. A. 1918E, 966]; Cumberland Lodge v. Nashville [127 Tenn. 248, 154 S. W. 1141]; Salt Lake Lodge v. Groesbeck [40 Utah, 1, 120 P. 192, Ann. Cas. 1914C, 940], all hereinbefore cited; People v. Farrell, 130 Misc. 142, 223 N. Y. S. 660; and Cooley on Taxation (4th Ed.) § 673."

In Ancient and A. S. R. of Freemasonry v. Board of County Com'rs, 122 Neb. 586, 241 N. W. 93, 97, 81 A. L. R. 1166, cited in the Temple Lodge Case, it was said that the rule of strict construction "does not mean that there should not be a liberal construction of the language used in order to carry out the expressed intention of the fundamental lawmakers and the legislature, but, rather, that the property which is claimed to be exempt must come clearly within the provisions granting such exemption."

Does not the property in the instant case "* * * come clearly within the provisions granting such exemption"?

To my mind it does. I find the plain meaning of the intended exemption in the phrase "all church property." This phrase does not require "metaphysical or logical subtleties," to interpret it.

I look to our Constitution and there seek the thought which it expressed to the people of New Mexico who ratified it. I give to it the meaning found in the minds of its makers who are the people who adopted it. "All church property" is plain language, and to the mind of the citizen who voted for its adoption it had but one meaning, simply all property belonging to the church, or all property of the church.

In the case of Todd v. Tierney, 38 N. M. 15, 27 P.(2d) 991, 1002, where we were called upon to construe article 4, § 1, of our Constitution, we said:

"It is our duty to determine what the plain citizen intended when he voted to adopt the Constitution.

"Says Mr. Justice Story: 'Constitutions are not designated for metaphysical or logical subtleties, for niceties of expression, for critical propriety, for elaborate shades of meaning, or for the exercise of philosophical acuteness of judicial research. They are instruments of a practical nature, founded on the common business of human life, adapted to common wants, designed for common use, and fitted for common understandings. The people make them, the people adopt them, the people must be supposed to read them, with the help of common sense, and cannot be presumed to admit in them any recondite meaning or any extraordinary gloss.' 1 Story, Const. § 451.

"We must give the subject a common sense and plain interpretation to carry out the intention of the plain people who adopted it."

Now what did the people of New Mexico understand to be the meaning of the phrase "all church property"? "All" as an adjective means "the whole of," and used as in the Constitution it refers to amount, quantity, or extent. All year includes every day thereof. "All church property," to the mind of the citizen, who voted for the adoption of the Constitution, includes every piece of property belonging to the church. Not merely " * * * the grounds, buildings, books, papers and apparatus of * * * religious institutions and societies, when the property of the said institutions and societies shall be devoted exclusively to the appropriate objects of such institutions and not leased or rented or otherwise used with a view to pecuniary profit," but the Constitution used an all embracing term, denoting ownership and not use, namely, "all church property."

Though I have the highest regard and respect for the views of the majority, being not in accord, I must dissent.

WATSON, Justice (concurring).

My conclusion is that of Mr. Justice ZINN and I am in general accord with what he has said.