427 P.2d 13

MOUNTAIN VIEW HOMES, INC., a corporation, Plaintiff-Appellant,

v.

The STATE TAX COMMISSION of the State of New Mexico and Edward M. Murphy, as Assessor for the County of Bernalillo, State of New Mexico, Defendants-Appellees,

A. M. Nassif, R. V. Kincaid and Albuquerque Board of Realtors, Intervenors-Appellees.

No. 8186.

Supreme Court of New Mexico.

May 1, 1967.

Kool & Kool, Albuquerque, for appellant. Boston E. Witt, Atty. Gen., John B. Speer, Special Asst. Atty. Gen., Santa Fe, for defendants-appellees.

Botts, Botts & Mauney, Albuquerque, for intervenors-appellees.

## OPINION

MOISE, Justice.

Plaintiff-appellant is a non-profit corporation organized under the laws of New Mexico to provide dwelling accommodations for moderate and low-income families and for families displaced by urban renewal areas. Its articles of incorporation prohibit distribution of any of its earnings to the benefit of any stockholder, individual, member or officer of the corporation.

Plaintiff built a multi-family housing complex in Albuquerque containing 316 units ranging in size from efficiency apartments to three bedrooms with two baths renting for $105.00 per month. The project was financed and is administered under § 221(d) (3) of the National Housing Act, as amended. The maximum income for tenants occupying the dwellings is regulated and controlled under the provisions of this

act. The average age of occupants in the project was found to be thirty-two years, and the average annual earnings $4,057.00. There was a range of maximum incomes from $4,250.00 for a single tenant to $6,-550.00 for a family of five or six. The residents are principally skilled and unskilled workers, military personnel, students, teachers and persons of advanced years.

Plaintiff's property was placed on the tax roll for the year 1965 by defendant, county assessor, and classified as exempt. Thereafter, the county commissioners of Bernalillo County, acting as a board of equalization, ordered the property placed on the rolls and taxed at a valuation fixed in their order. Upon appeal, this decision was affirmed by the State Tax Commission and, pursuant to § 72–6–13.8, N.M.S.A. 1953, appeal was taken to the district court which, in turn, determined that the property was taxable, and affirmed the decision of the State Tax Commission. Intervenors are interested taxpayers who sought and were allowed to intervene to support the position that plaintiffs property should not be exempted from taxes.

The issue which we are called upon to decide requires consideration of Art. VIII, § 3, N.M. Constitution, wherein it is provided:

"The property of the United States, the state and all counties, towns, cities and school districts, and other municipal corporations, public libraries, community ditches and all laterals thereof, all church property, all property used for educational or charitable purposes * * * shall be exempt from taxation."

Are apartments built by a non-profit corporation to be rented to families of moderate and low incomes, and which in fact are so rented and occupied, legally cognizable as "property used for charitable purposes"?

Although no similar case has been previously presented to us, a number of cases involving interpretation of Art. VIII, § 3, N.M. Constitution, have been decided. Among these, we take note of only a few. Temple Lodge No. 6, A. F. & A. M. v. Tierney, 37 N.M. 178, 20 P.2d 280 (1933), involved property owned and used by a Masonic lodge. The court there held that the particular provisions of our constitution disclosed a purpose to "extend the field or liberalize the policy of tax exemption." While denying any purpose to lay down a rule of general application, even insofar as Masonic lodges were concerned, the court determined under the facts disclosed by the record there being considered that the property was exempt. The following language was no less than prophetic:

"The broad expression 'used for educational or charitable purposes' necessarily imposes upon the courts a severe task of interpretation. It is easy to instance purposes clearly within it. It is not

difficult to suggest instances which would reduce to absurdity a rule too liberal. Appellees point out that the ordinary home is customarily used for educational purposes and often for charitable purposes. In a broad sense, a golf professional, a riding master, or a boxing instructor, is engaged in education. Charity may 'cover a multitude of sins.' The line of demarcation cannot be projected. It can take shape only by the gradual process of adjudicating this or that purpose or use on the one side of it or on the other, or by change in the constitutional criteria."

On the same day the Temple Lodge case was decided, the court also handed down Albuquerque Alumnae Ass'n, etc. v. Tierney, 37 N.M. 156, 20 P.2d 267 (1933), wherein property used as a sorority house was held not used for "educational" purposes and that it was accordingly taxable. Justice Bickley dissented because of his view that a stricter rule was being applied to determine the use by the sorority was not "educational," than was applied in the Temple Lodge case in determining the use there was primarily "charitable" and the property exempt.

Some two years later, in Albuquerque Lodge, No. 461, B. P. O. E. v. Tierney, 39 N.M. 135, 42 P.2d 206 (1935), the court held property used for an Elks lodge entitled to exemption as used primarily for charitable purposes under the rule announced in the Temple Lodge case. It is significant that in this case the lodge rented rooms in the building to its members. However, the court did not feel that this submerged the primary use of the property for charitable purposes. The court again confined its decision to the facts of the case being considered, cautioning that except as facts were similar, it should not be considered as precedent, even in other cases involving Elks lodges.

Next, we note Church of the Holy Faith v. State Tax Commission, 39 N.M. 403, 48 P.2d 777 (1935), decided only some six months after the Elks lodge case, wherein it was held that a dwelling house owned by a church and rented out for income which was used for church purposes, was neither "church property" nor property used for "charitable purposes" and accordingly not exempt. Two members of the court dissented because of a view that the facts did not support a conclusion different from that reached in the Temple Lodge case.

■ It is not our purpose to undertake a reconciliation of these cases. We observe, however, that while there may have been some question in the Church of the Holy Faith case as to whether the criterion for exemption was ownership or use, the language applicable here clearly makes use determinative. Accordingly, we must decide if the use is for charitable purposes. If it is, exemption should have been granted, and the cause must be reversed. If it

is not, the court ruled correctly and should be affirmed.

■ What is charity, and what is a charitable use, as these terms were understood by the membership of our constitutional convention, and by the ordinary voter who participated in adoption of the constitution containing this language? This is the test to be applied. Todd v. Tierney, 38 N.M. 15, 34, 27 P.2d 991, 1002 (1933) (Zinn, J., specially concurring). We would, at the outset, disclaim any thought that any determination in this regard may not be subject to considerable argument and disagreement. Nevertheless, it is our purpose to undertake a consideration of the problem as it might reasonably have been viewed by a member of the constitutional convention and a qualified voter called upon to express acceptance or rejection of the result of the labors of the convention. In the case of Santa Fe Lodge No. 460, B. P. O. E. v. Employment Security Com'n, 49 N.M. 149, 159 P.2d 312 (1945), we find the following language:

"The English Statute of Charitable Uses is in force in this state. Its preamble has been frequently referred to by the courts as showing purposes that are charitable, though it was not intended to be complete. Courts generally hold that any purpose is charitable which is within one of the types stated in the preamble, or that is analogous thereto. These are as follows:

" 'The relief of aged, impotent and poor people; the maintenance of maimed and sick soldiers and mariners; the support of schools of learning, free schools, and scholars of universities; repairs of bridges, ports, havens, causeways, churches, seabanks, and highways; education and preferment of orphans; the relief, stock, and maintenance of houses of correction; marriage of poor maids; aid and help of young tradesmen, handicraftsmen, and persons decayed; relief or redemption of prisoners and captives; aid of poor inhabitants concerning payments of fifteenths, setting out of soldiers, and other taxes.' Stat. 43 Eliz. c. 4, (1601).

"It is said that 'the tendency of the courts through the centuries which have elapsed since the enactment of the statute has been gradually to enlarge the scope of charitable purposes with the result that the purposes enumerated in the statute include only a few of those which are now regarded as charitable.' Scott on Trusts, Sec. 368.1. Also see 4 Pomeroy's Equity Jurisprudence, 4th Ed., Sec. 1020 et seq., and Restatement of the Law of Trusts, Sec. 368.

"A definition frequently approved is that of Mr. Justice Gray in Jackson v. Phillips, 14 Allen, Mass., 539, as follows:

" 'A charity, in the legal sense, may be more fully defined as a gift, to be

applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government.'

"See cases cited to the text of 10 A.J. 'Charities' Sec. 3; and 14 C.J.S., Charities, § .1, wherein, after quoting the definition of Justice Gray, it is said:

" 'While usually the word "charity" implies a gift in some form, in its widest sense it denotes all the good affections which men ought to bear toward one another, and in that sense it embraces what is generally understood by benevolence, philanthropy, and good will. In its more restricted and common sense it means relief or alms to the poor. Neither of these meanings is precisely descriptive, however, of the sense in which the courts use the term in applying the law relating to charities; in the legal sense it has a much wider significance than in common speech, it is not confined to mere almsgiving or the relief of poverty and distress, but extends to the improvement and promotion of the happiness of man.' " ·

The charitable purposes stated in the preamble to the English Statute of Charitable Uses which is in force in this state and which was referred to in the Santa Fe Lodge No. 460 case are urged upon us by plaintiff as the proper limits of charity to be here applied. In addition, other definitions of "charity" are found in the Santa Fe Lodge No. 460 case, and the plaintiff asserts that the uses of the property here at issue fits within them.

We are not prepared to attempt a delimitation of uses that are charitable and those that are not. Some definitions which have been advanced are to our minds far broader than we can accept in this case. One such is the definition in Jackson v. Phillips, 14 Allen, Mass., 539 (1867), quoted above in the Santa Fe Lodge No. 460 case.

The broad area that may be included under the term "charity" is well emphasized by looking at the definitions in 14 C.J.S. Charities § 1, p. 410, and 15 Am.Jur.2d 7, Charities, §§ 2 and 3; see, also, Ould v. Washington Hospital, 95 U.S. 303, 24 L.Ed. 450 (1877). It seems apparent to us that almost any activity which is not undertaken for profit and which has beneficial aspects concerning certain segments of our society may readily be classed as "charitable" under certain of these definitions. Conceivably, this could include a banking business, manufacturing business, or any other commercial enterprise, the

proceeds from which are used to promote and advance the well-being of man.

It is our firm conviction that no such all-embracing application of the term was contemplated by the drafters of our constitution. We would submit that property used in an operation such as that of plaintiff would not have been considered charitable when our constitution was adopted. True, no one makes a pecuniary profit, and certain persons and families who may be described as "low-income," "workers," "aged," or "underprivileged" are provided better housing at lower prices than would otherwise be available to them. A benefit is thus bestowed. However, the recipients are certainly in no sense sick or indigent, and we would venture that most would be surprised to learn that they are considered as being proper objects for, or as recipients of charity. There is nothing in the record which indicates that any are welfare clients, or are permitted to occupy apartments without payment of the established rental. Neither is there any element of fraternity, brotherhood or good fellowship intended to improve the spirits or impel to renewed effort. It is clear that rents are fixed at an amount necessary to pay the interest, amortize the principal and pay all expenses of maintaining the property. By what theory this should not include taxes on the same basis as other comparable properties is not clear to us. That the federal government does not tax the income derived from the property is in no way persuasive. Here, we have an enterprise to furnish low-cost housing to a certain segment of our population. It was intended to be self-supporting, without any thought that gifts or charity were involved. The tenants are required to pay for the premises occupied by them with the rentals being fixed so as to return the amount estimated as being necessary to pay out the project. It is competitive with landlords offering other residential property for rent and on which taxes must be paid. Also, as the State Tax Commission found, there was no evidence that the public is relieved of any expense in comparison with the loss of tax revenue. Compare Berger v. University of New Mexico, 28 N.M. 666, 217 P. 245 (1923). We conclude the use is not charitable so as to exempt the property from taxes under Art. VIII, § 3, N.M. Const.

We would observe that the decisions to which our attention has been called are not too persuasive. We note Webster Apartments v. City of New York, 118 Misc. 91, 193 N.Y.S. 650 (1922), aff'd, 206 A.D. 749, 200 N.Y.S. 956, wherein an apartment house erected by a corporation created pursuant to a testamentary trust, for the purpose of "providing unmarried working women with homes and wholesome food at a small cost to them and in deserving cases without cost" was a use solely for

benevolent and charitable purposes entitling the property to exemption from taxes.

Similar is the case of Franklin Square House v. City of Boston, 188 Mass. 409, 74 N.E. 675 (1905), wherein a building in which a home was provided for working girls at moderate cost by a non-profit corporation was held exempt from taxes. Typical of another type of situation where exemption has been upheld are Salvation Army v. Hoehn, 354 Mo. 107, 188 S.W. 2d 826 (1945), and Young Women's Christian Ass'n v. City of Lincoln, 177 Neb. 136, 128 N.W.2d 600 (1964). Also, there are cases where a public body furnishes housing, and where exemption has been allowed. Krause v. Peoria Housing Authority, 370 Ill. 356, 19 N.E.2d 193 (1939); Williamson v. Housing Authority, etc., of Augusta, 186 Ga. 673, 199 S.E. 43 (1938), and Marvin v. Housing Authority of Jacksonville, 133 Fla. 590, 183 So. 145 (1938), are of this type. For other cases see Annot., 16 L.R.A. (N.S.) 829, 843 (1908).

There are, however, cases holding property being similarly operated as subject to taxes. Of these, we cite Philada Home Fund v. Board of Tax Appeals, 5 Ohio St.2d 135, 214 N.E.2d 431 (1966). Taxing of apartments owned by a non-profit corporation and used to provide housing to aged and needy persons at or below cost was upheld.

Holding property utilized to provide low-cost housing taxable under circumstances comparable to those here present are County of Douglas v. OEA Senior Citizens, Inc., 172 Neb. 696, 111 N.W.2d 719 (1961); Beerman Foundation v. Board of Tax Appeals, 152 Ohio St. 179, 87 N.E.2d 474 (1949); Cleveland Branch of Guild of St. Barnabas for Nurses v. Board of Tax Appeals, 150 Ohio St. 484, 83 N.E.2d 229 (1948); Haines v. St. Petersburg Methodist Home, Inc., 173 So.2d 176 (Fla.App., 1965), cert. den. Fla., 183 So.2d 211; Presbyterian Homes, etc. v. City of Bradenton, 190 So.2d 771 (Fla.1966); see, also, cases cited in Annot., 34 A.L.R. 634, 659.

In Beerman Foundation v. Board of Tax Appeals, supra, the court recognized that housing for the needy, aged, sick, orphan or widows would be charity justifying exemption from taxes, but held that the use was not exclusively for charitable purposes where payment for accommodations was required of all occupants. Similar reasoning was adopted in County of Douglas v. OEA Senior Citizens, Inc., supra.

Also, we would express agreement with the statement of Chief Justice Watson in the opinion on rehearing in Albuquerque Alumnae Ass'n, etc. v. Tierney, supra, when he said, "As a pure matter of interpretation of language, it requires some liberality, we confess, to conclude that the use described in the Temple Lodge Case is properly characterized as 'charitable.'" In our view, it would require more than

"liberality" to find and conclude the use here involved is "charitable." To do so would result in extending the meaning of that term beyond the bounds of reason.

The trial court's conclusion is correct and should be affirmed.

It is so ordered.

NOBLE, COMPTON, and CARMODY, JJ., and WOOD, J., Court of Appeals, concur.