596 P.2d 255

SISTERS OF CHARITY OF CINCINNATI, OHIO, a corporation, Petitioner,

v.

COUNTY OF BERNALILLO, State of New Mexico, Respondent,

and

Property Tax Department of the State of New Mexico, Respondent.

No. 12329.

Supreme Court of New Mexico.

May 21, 1979.

Rehearing Denied June 12, 1979.

Johnson & Lanphere, John M. Kirk, Albuquerque, for petitioner.

Hunter L. Geer, Albuquerque, for County of Bernalillo.

Jeff Bingaman, Atty. Gen., John C. Cook, Asst. Atty. Gen., Santa Fe, for respondent Property Tax Dept.

## OPINION

PAYNE, Justice.

Petitioner, Sisters of Charity, paid 1974 and 1975 ad valorem taxes, under protest, on its office building and parking structure. In 1975 petitioner brought suit in the Bernalillo County District Court for a refund of the portion of taxes attributable to those parts of the properties used for charitable purposes. The district court granted judgment for petitioner, the Court of Appeals reversed and we granted certiorari.

Petitioner is a religious order which owns and operates schools and hospitals around the country. St. Joseph Hospital, Inc. is a

New Mexico non-profit corporation and a wholly owned subsidiary of petitioner. St. Joseph operates a hospital in Albuquerque.

The properties in question in this case are adjacent to the hospital, and consist of a medical office building and a parking structure next to it. These properties, like the hospital, are owned by petitioner. Petitioner leases the office building and the parking structure to St. Joseph. St. Joseph's payments under this lease correspond exactly with the payments that are made by petitioner to retire the indebtedness incurred in acquiring the properties.

The office building and parking structure are used both for hospital purposes and for rental to medical tenants. The portion of the office building used for hospital purposes amounts to 40.7 percent, and 59.3 percent is occupied by rent-paying medical tenants. The parking structure is used to the extent of 57.9 percent for hospital purposes, while 42.1 percent is assigned to the building's tenants. The parties agree that the hospital uses are charitable purposes.

The trial court held that petitioner was entitled to a proportionate exemption from property taxation for those portions of its medical building and parking structure that are used exclusively for charitable purposes.

The Court of Appeals reversed on two grounds. First, it held that petitioner, as a lessor, is not entitled to a charitable deduction for leased property, even if the lessee uses the property for charitable purposes. Second, the Court of Appeals held that a charity is not entitled to a partial tax exemption for that portion of its property which is used exclusively for charitable purposes.

In addition to these two holdings, we also address other issues raised before the trial court or on appeal.

## I.

*Is a lessor, which is a charitable organization, entitled to a charitable exemption for property put to a charitable use by a lessee?*

It has been held in New Mexico that the charitable use for which an exemption is given must be the use to which the property is put by the owner, rather than by the tenant. *Chapman's Inc. v. Huffman*, 90 N.M. 21, 559 P.2d 398 (1975); *Rutherford v. Cty. Assessor for Bernalillo Cty.*, 89 N.M. 348, 552 P.2d 479 (Ct.App.1976), *cert. denied*, 90 N.M. 8, 558 P.2d 620 (1976). It has also been held that even if the owner-lessor is using the rental income from the property for charitable purposes, the leased property does not qualify for a charitable exemption. *Church of the Holy Faith v. State Tax Commission*, 39 N.M. 403, 48 P.2d 777 (1935).

We are now asked to reconsider those rules to determine their applicability where (1) the lessee is a wholly owned subsidiary of the lessor; (2) no positive cash flow accrues to the lessor as a result of the lease arrangements, except reduction of its loan and the corresponding increase in its equity; and (3) both the lessor and lessee are charitable organizations.

Petitioner argues that where these three circumstances are present, the "no exemption for leased property" rule should not apply. Respondents concede the attractiveness of this argument, but they contend that "vague and amorphous exceptions" should not be engrafted onto the present well-defined rule. They assert that it would "inexorably lead to the unravelment of the intelligible and objective criterion by which applicants for charitable exemptions are judged and would be opening the door to disorder."

We must exercise judicial restraint to avoid such dangers as respondents suggest. However, if this Court holds that the lessor rule will not apply to situations where these three factors are present, then the exception is as well-defined and easy to apply as the general rule of no exemption.

It is also important for the law to retain sufficient flexibility to adjust to changing circumstances. We must inquire as to the purposes served by the present rule and whether those purposes are served by application of the rule in situations such as that

presented in this case. "It is a cardinal rule of construction that statutes are to be construed so that they carry out the intent of the legislature." *Hartford Hosp. v. City and Town of Hartford*, 160 Conn. 370, 279 A.2d 561, 563 (1971). This Court has held that Article VIII, Section 3 of the New Mexico Constitution is to be subject to "reasonable construction * * * to the end that the probable intent of the provision is effectuated and the public interests to be subserved thereby are furthered. (Citations omitted.)" *Benevolent & P. Ord. of Elks v. New Mexico Prop. A. D.*, 83 N.M. 445, 447, 493 P.2d 411, 413 (1972).

 The purpose of the charitable exemption is to encourage charitable activities by providing them with tax relief, and to thereby promote the general welfare of society. The countervailing consideration is to limit the exemption within reasonable bounds so as to minimize the shift of the tax burden to non-exempt property owners. Another consideration in limiting exemptions is to avoid inequitable competition in the name of charity with non-exempt entities. Taxation is the rule, and exemption is the exception. *Flaska v. State*, 51 N.M. 13, 177 P.2d 174 (1946).

"Foremost among the reasons why exemption from taxation is denied to property leased out by an otherwise tax exempt body is that the property is put to a profitmaking or revenue-producing use. . . . (Footnote omitted.)" Annot., 54 A.L.R.3d 402, § 11 at 471 (1974). "Normally, also, the property under lease serves the profitmaking purposes of some private [non-exempt] person or organization." *Id.* at 422.

 In this case both the lessor and lessee are charitable organizations. The lessee is a wholly owned subsidiary of the lessor, and the lessor's lease is not primarily "a profitmaking or revenue-producing" arrangement. The lessee has put a definable portion of the properties to the same charitable use for which the lessor-parent organization was created. In these circumstances the rationale for denying an exemption in a lease situation has disappeared and the rule should not be applied. We hold that under the facts in this case petitioner's lease to St. Joseph does not disqualify petitioner from exemption.

The recent trend in the United States is consistent with our holding. The notion that ownership and operation of the subject property must coincide in a single legal entity in order for property to qualify for a charitable exemption has been rejected in recent years in a number of other jurisdictions. *Christ The Good Shepherd, Etc. v. Mathiesen*, 81 Cal.App.3d 355, 146 Cal.Rptr. 321 (1978); *Childrens Development Center, Inc. v. Olson*, 52 Ill.2d 332, 288 N.E.2d 388 (1972); *Department of Revenue v. Cent. Medical Lab.*, 555 S.W.2d 632 (Ky.App. 1977); *Community Hospital Linen v. Com'r of Taxation*, 309 Minn. 447, 245 N.W.2d 190 (1976).

## II.

*Does Article VIII, Section 3 of the New Mexico Constitution permit a portion of the assessed value of property to be exempt from taxation to the extent that it is used for charitable purposes?*

Article VIII, Section 3 of the New Mexico Constitution states that "all property used for educational or charitable purposes * * shall be exempt from taxation."

Respondents contend, and the Court of Appeals held, that this provision does not permit a partial tax exemption for properties of which an ascertainable portion is used for charitable purposes. We do not agree with the arbitrary rule that property is taxable or non-taxable in its entirety.

The majority of jurisdictions in the United States have adopted the principle that where one portion of a piece of property is used for an exempt purpose and another portion for a non-exempt purpose, only the value of the non-exempt portion is subject to taxation. *See* Annot., 159 A.L.R. 685 (1945); 71 Am.Jur.2d *State and Local Taxation* § 371 (1973), and cases cited therein. This rule has been applied to hospitals which rent a portion of their premises to rent-paying medical tenants. *Milton Hospital & Conv. Home v. Board of Assessors*, 360 Mass. 63, 271 N.E.2d 745 (1971); *Gene-*

see *Hospital v. Wagner*, 47 A.D.2d 37, 364 N.Y.S.2d 934 (1975), *aff'd*, 39 N.Y.2d 863, 386 N.Y.S.2d 216, 352 N.E.2d 133 (1976).

None of the considerations, which we previously stated should be referred to in determining the scope of Article VIII, Section 3, mandate the "all or nothing" approach adopted by the Court of Appeals in this case.

First, there is no practical reason why the taxing authorities cannot arrive at a just valuation of that portion of a building which is used for non-exempt purposes, in relation to the value of the entire property, and assess the property on that amount. In this case the parties have stipulated that a mathematically ascertainable portion of petitioner's properties were used for a charitable purpose. In such a case, the apportionment approach can be easily applied and enforced.

Second, this approach, consistent with the policy of the charitable exemption, encourages charitable activities by providing tax relief for those activities which are directly and actually of a charitable nature, while, at the same time, it taxes those activities which are not directly charitable and which compete with non-tax exempt entities.

■ Therefore, we hold that where one substantial part of a building that is owned by a charitable institution is directly and actually occupied and used for charitable purposes, and another substantial portion is primarily used for commercial leasing, such building is pro rata taxable according to its separate uses. *See Christian Business Men's Committee v. State*, 228 Minn. 549, 38 N.W.2d 803 (1949). Petitioner is entitled to a tax exemption as to 40.7 percent of the value of the office building and 57.9 percent of the value of the parking structure.

### III.

*Was the claim for refund of 1974 taxes timely filed?*

Petitioner's first cause of action in its complaint was for a refund of taxes paid for the 1974 tax year pursuant to § 72–5–4, N.M.S.A.1953 (Repl.1961) (repealed by N.M. Laws 1973, ch. 258, § 156, as amended by N.M. Laws 1974, ch. 92, § 34). Respondents contend that the time limitations in § 72–5–5, N.M.S.A.1953 (Repl.1961) (repealed by N.M. Laws 1973, ch. 258, § 156, as amended by N.M. Laws 1974, ch. 92, § 34) apply to suits brought under § 72–5–4, and that petitioner's first cause of action was untimely under § 72–5–5.[1] Respondents also contend that the claim for 1974 taxes is barred by reason of petitioner's failure to exhaust its administrative remedies. We need not reach either issue because we have concluded that petitioner's claim was not timely filed under § 72–5–4.

Section 72–5–4 provided that claims for refund of taxes which were erroneously assessed must have been filed in the district court within ninety days of the date on which the taxes were paid.

The 1974 tax assessment was paid on November 19, 1975. The suit for refund of these taxes was filed one week later. Petitioner contends that it therefore complied with the time limits of § 72–5–4. We do not agree.

■ We hold that the term "payment" in § 72–5–4 means "timely payment" of taxes. Any other interpretation would permit a taxpayer to ignore time limitations on the payment of taxes and claim a refund after the taxes were eventually paid so long as the claim was filed within ninety days of the late payment. We cannot accept this proposition.

■ Under the statutory scheme applicable to the 1974 tax assessment, one-half of the tax assessment became delinquent in December of the tax year, and the other half became delinquent on May 1 of the following year. § 72–7–3, N.M.S.A.1953 (Repl.1961) (repealed by N.M. Laws 1973, ch. 258, § 156 and N.M. Laws 1974, ch. 92, § 34). Petitioner's payment of 1974 taxes

---

1. The effective date of the repeal of §§ 72–5–4 and 72–5–5 was January 1, 1975. N.M. Laws 1974, ch. 92, § 36. N.M. Laws 1973, ch. 258, § 153, as amended by N.M. Laws 1974, ch. 92, § 33, provided that §§ 72–5–4 and 72–5–5 would apply to the 1974 tax year.

in November 1975 was not timely. Recovery of those taxes was therefore barred by § 72–5–4.

## IV.

*Can relief be given in a tax refund suit not only for years mentioned in the complaint but for subsequent years?*

The trial court awarded petitioner a partial refund of the taxes it paid for the 1976 tax year, despite the fact that petitioner's original complaint had not sought such relief, and despite the failure of petitioner to file a supplemental or amended complaint asserting a claim as to 1976 taxes.

Respondents contend that a claim for 1976 taxes must have been filed by December 15, 1976 under § 7–38–40, N.M.S.A.1978 (formerly § 72–31–40, N.M.S.A.1953 (Supp. 1975)). They argue that the failure of petitioner to file a supplemental complaint prior to that date deprived the trial court of jurisdiction to refund the 1976 taxes.

This issue is controlled by our decision in *Dale Bellamah Land Co. v. Bernalillo County*, N.M., 592 P.2d 971 (1978). In that case we held that a claim for 1976 taxes, asserted in a supplemental complaint in an action for a refund of 1975 taxes, was not timely where the supplemental complaint was filed six weeks after the deadline under § 7–38–40(A)(1) for claiming a refund of 1976 taxes.

In this case no supplemental complaint was ever filed. Although the parties did stipulate that the facts applicable to the 1974 and 1975 tax years also applied to 1976, this stipulation did not amount to a waiver of the time limitations contained in § 7–38–40(A)(1).

Therefore, the trial court erred in awarding petitioner a partial refund of 1976 taxes.

The judgment of the Court of Appeals is reversed. The judgment of the trial court is affirmed as to the 1975 tax year, and reversed as to the 1974 and 1976 tax years.

IT IS SO ORDERED.

SOSA, C. J., EASLEY and FEDERICI, JJ., and McMANUS, Senior Justice, concur.