SHARED HOSPITAL SERVICES COR-
PORATION, Plaintiff-Appellee,

v.

Glenn FERGUSON, Trustee, and Metro-
politan Government of Nashville and
Davidson County, Tennessee, Defend-
ants-Appellants.

Supreme Court of Tennessee,
at Nashville.

June 11, 1984.

Joseph W. Gibbs, Boult, Cummings, Con-
ners, & Berry, Nashville, for plaintiff-ap-
pellee.

John P. Long, Nashville, for defendants-
appellants.

OPINION

HARBISON, Justice.

This action was instituted by appellee to recover real and personal property taxes paid to the Metropolitan Government of Nashville and Davidson County, Tennessee, under protest for the years 1979, 1980 and 1981. Appellee claimed exemption from taxation for its property as a charitable corporation pursuant to T.C.A. § 67–5–212. Both the Chancellor and the Court of Appeals allowed the exemption. The Court of Appeals modified the decision of the Chancellor with respect to the exempt status of certain improvements which had been erected but had not actually been placed in use as of January 1, 1980. We affirm the decision of the Court of Appeals in all respects.

Appellee is a general welfare corporation which was organized to supply and furnish laundry services to its members on a non-profit cooperative basis. Its membership is limited to hospitals which qualify as organizations exempt from federal income taxation pursuant to § 501(c)(3) of the Internal Revenue Code. Appellee was organized by two Nashville hospitals, both of which are so exempt. These are the St. Thomas Hospital, which is a charitable organization, and Vanderbilt University, which operates a teaching hospital in connection with its Medical School. Both institutions own substantial properties in Nashville and Davidson County, some of these being exempt from taxation and others not exempt.

At all times relevant to this case the only members of appellee have been Vanderbilt and St. Thomas, although membership is open to other qualified hospitals which may wish to join. Appellee owns record title to a tract of land in Davidson County comprising 2.79 acres. A large building has been built thereon, comprising 26,327 square

feet, together with laundry equipment and machinery. There is also a parking area adjacent for the accommodation of employees and other persons having business at the facility.

Financing of these facilities was accomplished through the sale of revenue bonds issued by the Health and Educational Facilities Board of the Metropolitan Government of Nashville and Davidson County. Proceeds of the bonds were loaned to appellee for payment of expenses of the bond issue and the cost of acquiring, constructing and equipping the laundry. Appellee is required to make installment payments to the Trustee under the bond indenture in amounts sufficient to pay the principal and interest on the bonds. The bonds are guaranteed by Vanderbilt and St. Thomas.

Officials of these institutions comprise most of the members of the Board of Directors of appellee. The laundry is managed by a commercial consulting and management firm, Foussard Associates of St. Paul, Minnesota. A management fee is paid to this company, but its services can be terminated by the Board of appellee if desired. Costs to the members performing laundry services are fixed by the Board at amounts sufficient to pay management and operating expenses and to retire the bonded indebtedness. No excess profits are accumulated beyond those necessary to deal with reasonable business contingencies. When deficits have occurred, the members have made additional donations to enable appellee to meet its obligations. Under the corporate structure and by-laws no excess profits may be accumulated for distribution to the members of appellee. In the event of dissolution all assets must be distributed to either educational or charitable institutions.

Prior to the formation of appellee, Vanderbilt University operated its own hospital laundry. St. Thomas contracted for services by a commercial laundry. Both institutions have experienced substantial savings over their previous laundry costs by virtue of their membership in the shared laundry facilities operated by appellee.

These facilities are located several miles from the Vanderbilt campus and from the main hospital buildings of St. Thomas. The facilities are located in a large commercial development known as Metro Center. However, there are no nearby commercial eating establishments or public parking facilities. Appellee does not operate a commercial cafeteria or food-service facility on its premises. It does provide a lunchroom, or lounge, where its employees may bring food and drink for purposes of eating their own lunches. The record does not reveal that there are vending machines on the premises, although there is a microwave oven and a refrigerator in the lunchroom area.

All employees, other than the management personnel supplied by Foussard, are hired directly by appellee. They are paid by it, and their wage scales and other employee benefits are determined by the Board of appellee. Appellee has an insurance and benefit program for its employees generally equivalent to those available to employees of the member hospitals.

The development and utilization of a shared laundry by public and charitable hospitals has become rather widespread in recent years. Mr. George W. Wade, manager of appellee, testified:

"Shared laundries has become particularly popular with most hospitals for several reasons, among which are the fact that hospitals considered that their on-site square footage is best used in serving the patient more directly than by having a laundry on site. That is to say, there should be patient beds and laboratories and that sort of thing on the premises of the hospitals. They have chosen then to go outside the particular locations to pool their resources and have one larger laundry than could be justified, and hopefully a more cost-efficient laundry than could be justified by any of the individual hospitals."

It is insisted by appellants, the taxing authorities, that appellee is not entitled to an exemption from property taxation. Appellants insist that appellee consists of

nothing more than a large commercial laundry, operating in direct competition with similar enterprises whose property is subject to taxation. Secondarily, appellants insist that if appellee qualifies as a tax-exempt institution, nevertheless its lunchroom and parking facilities are taxable under the holding of this Court in *City of Nashville v. State Board of Equalization,* 210 Tenn. 587, 360 S.W.2d 458 (1962).

The history of exemption of parking facilities has recently been reviewed in the opinion of this Court in *Methodist Hospitals of Memphis v. The Assessment Appeals Commission,* Davidson Equity, released for publication on April 23, 1984, 669 S.W.2d 305. It is not necessary to repeat that discussion here. For reasons stated in that case, we are of the opinion that if appellee qualifies as a charitable organization, its parking facilities are entitled to an exemption. This record shows that the lunchroom involved in the present case is hardly more than an employee lounge, and we do not believe that it is subject to taxation under the *City of Nashville* case, *supra.*

The principal question, therefore, is whether appellee qualifies as a tax-exempt corporation. If so, we are of the opinion that all of the properties involved here are entitled to exemption; otherwise none of them are.

Tennessee statutes exempt religious, scientific, educational and charitable institutions. It is not insisted that appellee is either religious, scientific or educational in nature. Accordingly unless the status of its member hospitals can be attributed or imputed to it, appellee must qualify as a charitable institution in order for its property to be exempt.

A charitable institution is defined in the Tennessee statutes as including

"... any nonprofit organization or association devoting its efforts and property, or any portion thereof, exclusively to the improvement of human rights and/or

conditions in the community." T.C.A. § 67–5–212(c).

It is insisted by appellee that the furnishing of laundry services is an essential and integral part of the operation of a hospital. Most cases which have considered this subject support that contention, and we agree. There is no question but that if each member hospital operated its own laundry, the laundry facilities would be exempt. In the case of Vanderbilt, they would be exempt as being an integral part of an educational institution and teaching hospital; in the case of St. Thomas, as part of a charitable hospital. Appellants do not contend otherwise, but it is insisted that when appellee was formed as a separate corporation, it must be viewed separately, and not as an integral part of either of the member institutions which formed it and which still comprise its membership.

We think that there is merit in this contention. Both the trial court and the Court of Appeals held that the real and personal property in question were "indirectly owned" by Vanderbilt and St. Thomas, and that the exempt status of these institutions carried through the separate corporate structure of appellee to the assets of appellee which are sought to be taxed. There is some authority for this proposition in other states. *See e.g., Community Hospital Linen Services, Inc. v. Commissioner of Taxation,* 309 Minn. 447, 245 N.W.2d 190 (1976), where a cooperative laundry enterprise was deemed to be merely an arm or agency of member hospitals. Also, property of a cooperative association engaged in performing collection and printing services for member hospitals was deemed to be exempt, its assets being considered as if owned directly by the member institutions.[1]

There is some difficulty with this rationale under the applicable provisions of the Tennessee statutes. With respect to this case, the status of the taxpayer must be determined independently of its component

---

1. *See also Sisters of Charity of Cincinnati, Ohio v. County of Bernalillo,* 93 N.M. 42, 596 P.2d 255 (1979).

or member organizations. Vanderbilt and St. Thomas created appellee as a separate corporation, and that corporation is either charitable or not, in its own right, in our opinion. The attributes of its parent members are not necessarily controlling. As applicable to this case, state statutes require that exempt assets be (1) owned, (2) occupied and (3) used exclusively by a charitable or other qualifying institution and used for an exempt purpose. T.C.A. § 67–5–212(a).[2]

We find more satisfactory the rationale of the Kentucky Court of Appeals in the case of *Department of Revenue v. Central Medical Laboratory, Inc.*, 555 S.W.2d 632 (Ky.Ct.App.1977). There the taxpayer, Central Medical Laboratory, Inc., was organized as a separate non-profit corporation for the purpose of providing laboratory testing facilities for three Louisville non-profit hospitals. The Court held that this laboratory was "a purely public charity" as contemplated by the state's constitution and statutes, and that it was exempt from state sales and use taxes. Kentucky courts had held that the term "charity" includes "activities which reasonably better the condition of mankind ...." 555 S.W.2d at 634.

It is true that appellee competes with commercial laundries in Nashville and Davidson County, but that, in itself, is not determinative. It is not contended that any member, officer or employee of appellee derives a pecuniary profit from the laundry operation, except reasonable compensation for services rendered. There is no claim that the payments made to Foussard Associates are excessive or unreasonable, or that the arrangement is a subterfuge to enable the latter to operate a commercial laundry under the guise of a charitable enterprise.

In one of the leading cases in this state construing the tax exemption statutes, the Court stated:

"It is true that the Methodist and Baptist institutions are in competition with other publishers, printers and consultants. Under the statute, however, the presence of competition makes property taxable only where an individual receives profits. Prior decisions have made reference to competition with tax-paying businesses. [Citations omitted]. The presence of competition is relevant but not determinative. Other companies could compete with an institution's efforts to accomplish an exempt institutional purpose, but the circumstances may indicate that the purpose is not exempt." *Book Agents of the Methodist Episcopal Church, South v. State Board of Equalization,* 513 S.W.2d 514, 523 (Tenn.1974).

In that case two large religious printing and publishing institutions were held entitled to tax exemption on their printing and publishing facilities, to the extent that these were devoted to religious purposes. To the extent that the facilities were devoted to commercial printing other than religious, they were held taxable.

In the present case there is no question but that all of the laundry services performed by appellee are exclusively for the benefit of the member hospitals. No services are rendered to any other institutions or customers. We are of the opinion that, on the facts presented, appellee itself is a charitable corporation within the meaning of the Tennessee statutes, and that its properties are entitled to the exemption claimed.

A similar conclusion was reached by the Supreme Judicial Court of Massachusetts in the case of the *Children's Hospital Medical Center v. Board of Assessors of Boston,* 353 Mass. 35, 227 N.E.2d 908 (1967). On almost identical facts, the Court held that a hospital laundry association, performing services for seven Boston nonprofit hospitals, was itself a charitable corporation within the meaning of the Massachusetts statutes. It was argued there,

---

**2.** The exemption statutes do provide for leasing and other arrangements between exempt institutions where one occupies or uses property owned by another, but those provisions are not applicable here.

as here, that the laundry operation was simply a commercial venture and that it did not come within the purview of statutes exempting charities. The taxing authorities argued that such an operation

"does not bring the minds or hearts of an indefinite number of persons under the influence of education or religion or relieve their bodies from disease, suffering or constraint, or assist them to establish themselves in life...."

Rejecting this argument, the Court said: "Laundry service is, as we have stated, an integral part of hospital operation. A policy to provide this service efficiently and at low cost does help to relieve the bodies of patients from disease, suffering, or constraint. The number of people so benefited *is* indefinite, notwithstanding the assessors' contrary protest. Such patients might include anybody and will include those admitted from public agencies for whom some payment is made. The purpose is 'for the benefit of the public at large or some part thereof, or an indefinite class of persons.'" 227 N.E.2d at 914.

A similar result was reached in the case of *Hospital Purchasing Service of Michigan v. City of Hastings,* 11 Mich.App. 500, 161 N.W.2d 759 (1968) with respect to properties of a non-profit corporation organized for the purpose of purchasing general supplies for a large group of hospitals. The only authority to the contrary which has been cited to us is *Joint Hospital Services, Inc. v. Lindley,* 52 Ohio St.2d 153, 370 N.E.2d 474 (1977) holding that a shared laundry and linen service for non-profit hospitals and nursing homes was not entitled to exemption from state sales taxes.[3]

We recognize that the United States Supreme Court has held that a shared laundry facility such as that involved in the present case did not qualify for federal income tax exemption in the case of *HCSC—Laundry v. United States,* 450 U.S. 1, 101 S.Ct. 836, 67 L.Ed.2d 1 (1981).

That case turned entirely on statutory construction, however, and denied exemption to a laundry facility solely because such facilities had been expressly excluded from the provisions of § 501(e) of the Internal Revenue Code which granted exemptions to a number of other cooperative hospital service organizations. The terms of the federal statutes and those of the Tennessee statutes involved here are not identical. We do not believe that the case just cited is controlling here.

The judgment of the Court of Appeals is affirmed at the cost of appellants. The cause will be remanded to the trial court for any further orders which may be necessary.

COOPER, C.J., and BROCK and DROWOTA, JJ., concur.

FONES, Justice, dissenting.

I respectfully dissent.

I agree with the majority wherein it is said that the status of Vanderbilt and St. Thomas as exempt institutions cannot be imputed to plaintiff and that plaintiff, as a separate corporation, "is either charitable or not, in its own right," and that it must qualify as a charitable institution in order for its property to be exempt.

The charter of Shared Hospital Services Corporation describes its purpose, in part, as follows:

5. The purposes for which the corporation is organized are to supply and furnish to its members on a non-profit cooperative basis such reuseable or disposable linen and laundry supplies and such linen and laundry supplies as they may require and such other related supplies and services of any kind as they may require; ...

The remainder of the purpose clause, confers the usual powers necessary and incidental to the attainment to the quoted purposes.

---

3. In this regard, we note that the Tennessee statutes granting exemption from sales and use taxes are not identical to those granting exemp-

tion from real and personal property taxes. *Compare* T.C.A. § 67–6–322 *with* T.C.A. § 67–5–212.

The Tennessee definition of a charitable institution requires, in essence, that its efforts and property be devoted "exclusively to the improvement of human rights and/or conditions in the community." I cannot agree that a legal entity carrying out its chartered purpose of furnishing reuseable or disposable laundry supplies to non-profit charitable or other exempt institutions is thus devoting its efforts and property exclusively to the improvement of human rights and/or conditions in the community. The furnishing of laundry supplies is simply not ministering to the needs of the community.

In Tennessee we have a three-pronged test that must be met in order to qualify for the exemption at issue in this case. First, the institution must be qualified as a religious, charitable, scientific or educational institution. Second, it must own the property that it claims to be exempt. Third, the property must be occupied and used exclusively for one or more of the exempt purposes of its charter by the exempt institution. *Book Agents of Methodist Episcopal Church v. State Board of Equalization,* 513 S.W.2d 514 at 522 (Tenn. 1974). Plaintiff's property is used exclusively as a laundry which is not an exempt purpose and it seems to me that even if it could qualify as a charitable institution it would still fail to meet the third necessary prerequisite.

The majority's conclusion with which I disagree, that Shared Hospital Services Corporation is a charitable institution in its own right, appears to be predicated upon the reasoning employed in the Kentucky case of *Department of Revenue v. Central Medical Laboratory, Inc., supra,* and the Massachusetts case of *Children's Hospital Medical Center v. Board of Assessors of Boston, supra.*

In Kentucky there is no three-pronged requirement to qualify for the exemption. Section 170 of the Kentucky constitution sets out the simple requirement as follows: "There shall be exempt from taxation ... institutions of purely public charity." The court in *Central Medical Laboratory,* used the definition of a purely public charity set forth in the prior case of *Commonwealth ex rel. Luckett v. I.W. Bernheim Foundation,* 505 S.W.2d 762 (Ky.1974), "that charity includes activities which reasonably better the condition of mankind and that it is broader than relief to the needy poor." 555 S.W.2d at 634. The only rationale I find in the Kentucky court's opinion, to bring the laboratory within that definition, is that the laboratory makes no profit and the lower lab fees were said to inure to the benefit of the general public. It is not clear whether there was proof in support of those two conclusions or mere implications drawn from the non-profit status of the labs and hospitals. In any event, I am not impressed with the logic of the Kentucky court in finding a shared laboratory testing facility that makes its services available to exempt hospitals, to be "a purely public charity."

I am even less impressed with the logic of the Supreme Judicial Court of Massachusetts wherein the conclusion was reached that "a policy to provide this service [laundry] efficiently and at a low cost does help to relieve the bodies of patients from disease, suffering or constraint" and thus qualifies a shared laundry corporation as a charitable institution.

While, as indicated above, I agree with the rejection of the theory of "imputing" the status of Vanderbilt and St. Thomas to plaintiff corporation, I regard it as a more palatable rationale than the one used to grant this exemption.

I would reverse the trial court and the Court of Appeals and dismiss this non-exempt plaintiff's suit to recover taxes.