This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**SAYLOR FAMILY TRUST, LLC, ALBUQUERQUE TALENT DEVELOPMENT ACADEMY, CHRISTINE DUNCAN'S HERITAGE ACADEMY, and SOUTHWEST PRIMARY, INTERMEDIATE AND SECONDARY CHARTER SCHOOLS,**

Appellants-Respondents,

**v.**                                               No. A-1-CA-36115

**BERNALILLO COUNTY ASSESSOR,**

Appellee-Petitioner,

and

**BERNALILLO COUNTY VALUATION PROTESTS BOARD,**

Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Alan M. Malott, District Judge**

Peifer, Hanson & Mullins, P.A.
Mark T. Baker
Matthew E. Jackson
Albuquerque, NM

Matthews Fox, P.C.
Susan Barger Fox

Santa Fe, NM

for Appellants

Robles, Rael & Anaya, P.C.
Charles Rennick
Marcus J. Rael, Jr.
Albuquerque, NM

for Appellees

**MEMORANDUM OPINION**

**VIGIL, Judge.**

{1}     The Bernalillo County Valuation Protests Board (the Board) and the Bernalillo County Assessor (the Assessor) (collectively, Petitioners) appeal the district court's order granting Saylor Family Trust, LLC, (Owner) Albuquerque Talent Development Academy, Christine Duncan's Heritage Academy, and the Southwest Primary, Intermediate and Secondary Charter Schools (Tenants) (collectively, Respondents) an educational property tax exemption pursuant to Article VIII, Section 3 of the New Mexico Constitution. We affirm.

**BACKGROUND**

{2}     Owner owns three properties (the Properties) located at 1900 Atrisco Drive NW, 10301 Candelaria Road NE, and 1800 Atrisco Drive NW in Albuquerque, New Mexico. Owner built facilities for schools at the Properties and leased them to Tenants. Tenants are all public charter schools and, as required in their lease

2

agreements, use the Properties exclusively for providing public education to students.

**{3}** Respondents filed applications for educational use exemptions that the Assessor denied, and Respondents protested the Assessor's denials. Following a hearing on the matter, the Board determined it was bound by *Chapman's, Inc. v. Huffman*, 1975-NMSC-062, 90 N.M. 21, 559 P.2d 398, and *Rutherford v. Cty. Assessor for Bernalillo Cty.*, 1976-NMCA-053, 89 N.M. 348, 552 P.2d 479, and found the Properties were "not entitled to exemption under Article VIII, [Section] 3 of the New Mexico Constitution." Respondents appealed the Board's decision to the district court. *See* Rule 1-074(C) NMRA ("When provided or permitted by law, an aggrieved party may appeal a final decision or order of an agency."); *see also* NMSA 1978, § 7-38-28(A) (2015) ("A property owner may appeal an order made by . . . a county valuation protests board by filing an appeal pursuant to the provisions of [NMSA 1978,] Section 39-3-1.1 [(1999)]."); § 39-3-1.1(C) ("[A] person aggrieved by a final decision may appeal the decision to district court.").

**{4}** On appeal, the district court reversed the Board's decision pursuant to *CAVU Co. v. Martinez*, 2014-NMSC-029, 332 P.3d 287, because "[t]he direct, and only, use of the [P]roperties were as schools, and . . . the [district c]ourt finds no question that the use of the [P]roperties as schools embraces systematic instruction and creates a substantial public benefit." Furthermore, the district court concluded

3

that the cases cited by Petitioners, *see Sisters of Charity of Cincinnati, Ohio v. Cty. of Bernalillo*, 1979-NMSC-044, 93 N.M. 42, 596 P.2d 255; *Chapman's, Inc.*, 1975-NMSC-062; *Rutherford*, 1976-NMCA-053, applied to charitable, not educational, exemptions. Petitioners filed a petition for writ of certiorari with this Court. *See* Rule 12-505(B) NMRA ("A party aggrieved by the final order of the district court in [an administrative appeal under Rule 1-074] may seek review of the order by filing a writ of certiorari with the Court of Appeals, which may exercise its discretion whether to grant the review."). We granted certiorari to determine whether the Properties are exempt from taxation under the educational use provision, and whether the exemptions for educational and charitable uses found in Article VIII, Section 3 of the New Mexico Constitution are subject to different standards.

**DISCUSSION**

**Standard of Review**

{5}    "We review a district court's decision in an administrative appeal under an administrative standard of review." *CAVU Co.*, 2013-NMCA-050, ¶ 11 (internal quotation marks and citation omitted). "[W]e conduct the same review of an administrative order as the district court sitting in its appellate capacity, while at the same time determining whether the district court erred in the first appeal." *Id.* (internal quotation marks and citation omitted). "The district court may reverse the

4

[p]rotest [b]oard if it acted outside the scope of authority of the agency, or if the district court determines that the administrative entity acted fraudulently, arbitrarily, or capriciously; if the decision was not supported by substantial evidence in the whole record; or if the [p]rotest [p]oard did not act in accordance with the law." *Id.* (alterations, omission, internal quotation marks, and citations omitted). "Interpretation of a statute is a question of law which an appellate court reviews de novo." *Id.*

{6}     "Property is presumed to be subject to taxation." *Georgia O'Keefe Museum v. Cty. of Santa Fe*, 2003-NMCA-003, ¶ 32, 133 N.M. 297, 62 P.3d 754. However, Article VIII, Section 3 of the New Mexico Constitution provides that "all property used for educational or charitable purposes . . . shall be exempt from taxation." Because this exemption deals with the taxation of real property, "the use of the property, not the ownership, . . . is the determinative factor in property taxation." *Georgia O'Keefe Museum*, 2003-NMCA-003, ¶ 40; *see Albuquerque Lodge, No. 461, B.P.O.E. v. Tierney*, 1935-NMSC-022, ¶ 29, 39 N.M. 135, 42 P.2d 206 (holding that "[i]t is the use of property, not the declared objects and purposes of its owner which determines the right to exemption"). "The proper focus of any inquiry into the propriety of an exemption is whether the use of the property furthers exempt purposes." *CAVU Co.*, 2014-NMSC-029, ¶ 21 (alteration, internal quotation marks, and citation omitted). "It is the taxpayer's burden to claim, apply

5

for, and prove an exemption based on an educational or charitable use." *Georgia O'Keefe Museum*, 2003-NMCA-003, ¶ 32.

{7} We deal here with Respondents' application for an educational use exemption. "[T]he phrase 'used for educational purposes' [means] 'the direct, immediate, primary and substantial use of property that embraces systematic instruction in any and all branches of learning from which a substantial public benefit is derived.' " *NRA Special Contribution Fund v. Bd. of Cty. Comm'rs*, 1978-NMCA-096, ¶ 35, 92 N.M. 541, 591 P.2d 672. While the parties do not dispute that Tenants used the Properties for educational purposes, Petitioners argue that the Properties should nonetheless be subject to taxation because Owner's use was not for educational purposes. We disagree.

{8} In 2014 our Supreme Court addressed a similar question in *CAVU Co.* There, CAVU Co. applied for an educational use exemption for the twenty-six-acre school campus it owned. 2014-NMSC-029, ¶¶ 2, 5. Seven years before CAVU Co. purchased the property, it had been developed and improved "solely for operation as a school." *Id.* ¶ 2. Before and during CAVU Co.'s ownership, the property was "used for educational purposes by several schools and ha[d] never been used for any other purpose." *Id.* ¶ 2, 3. However, four years after CAVU Co. purchased the property, the tenant-school closed, and the property remained vacant for almost two years. *Id.* ¶¶ 2-4. CAVU Co. listed the property for sale, but turned down a

6

film company's offer to lease the property, "insisting on maintaining the property for educational uses only[.]" *Id.* ¶ 4 (alteration and internal quotation marks omitted).

{9}    After temporarily leasing the property to a dog training school, CAVU Co. applied for an educational use exemption which the Santa Fe County Assessor denied. *Id.* ¶ 5. Citing the period during which the property was vacant, the Assessor stated "the property was not used directly and immediately for educational purposes." *Id.* (internal quotation marks omitted). Later that same year, CAVU Co. leased the property to an elementary school. *Id.* ¶ 6. The following year, the Santa Fe County Valuation Protests Board reinstated CAVU Co.'s exemption without making a formal decision on the property's education use because a similar vacant school remained exempt. *Id.* ¶¶ 7-8.

{10}    On appeal, our Supreme Court held that, in seeking out and engaging with interested educational tenants, negotiating lease terms with a college preparatory school, and rejecting the film company's offer, CAVU Co. "used the temporarily vacant property in a direct and immediate effort to further its educational use." *Id.* ¶ 26. Furthermore, its lease negotiations with the college preparatory school, its refusal to lease to the film company, and its stated intent of leasing solely to an educational facility indicated that CAVU Co. embraced systematic instruction. *Id.* ¶ 28. The Court concluded that these actions resulted in a substantial public benefit

7

by "drawing potential school tenants into negotiations, all in furtherance of its educational purpose." *Id.* ¶ 31. However, because the board had not formally decided whether the property was eligible for an educational use exemption, the Court remanded "with directions to determine whether [CAVU Co.'s] use of the [p]roperty was in furtherance of its exempt purpose." *Id.* ¶ 32.

{11}    Similarly, in the case before us, Owner put the Properties to use for educational purposes. Most notably, whereas *CAVU Co.* dealt with the owner's use of the property when the property was *vacant*, we are faced with a situation in which the Properties are leased by educational tenants. Prior to Tenants' lease agreements, Owner developed facilities on the Properties and, in its lease agreements, Owner explicitly restricted the use of the Properties to educational purposes. Accordingly, we conclude that *CAVU Co.* mandates our affirmance of the district court.

{12}    Moreover, unlike the district court, we conclude that *CAVU Co.* is consistent with the cases cited by Petitioners. *See Sisters of Charity*, 1979-NMSC-044; *Chapman's, Inc.*, 1975-NMSC-062; *Rutherford*, 1976-NMCA-053. *Chapman's, Inc.* and its progeny stand for the proposition that the qualifying use for exemption purposes is the "use by the owner of the property rather than the use to which the property is put by the tenant[.]" 1975-NMSC-062, ¶ 2; *see Rutherford*, 1976-NMCA-053, ¶ 9 (extending *Chapman's, Inc.*'s rule that "the charitable use

8

specified in Article VIII, Section 3 of the Constitution of New Mexico should be construed to mean use by the owner of the property rather than the use to which the property is put by the tenant" (internal quotation marks and citation omitted)); *see also Sisters of Charity*, 1979-NMSC-044, ¶ 8 (same). Consistent with this line of cases, *CAVU Co.* examined the owner's use of the property. We have done the same here.

{13}     We note Petitioner's argument that Owner's revenue-generating use should disqualify the Properties from exemption. *Sisters of Charity*, on which Petitioners rely, involved the religious order's request for a refund of taxes attributable to property it owned and leased to St. Joseph Hospital, a non-profit corporation also owned by Sisters of Charity. 1979-NMSC-044, ¶¶ 1-3. Our Supreme Court concluded the lease to St. Joseph did not disqualify Sisters of Charity from a charitable use exemption because the two organizations were charitable in nature, St. Joseph was a "wholly owned subsidiary of [Sisters of Charity], and [St. Joseph's] lease is not primarily a profitmaking or revenue-producing arrangement." *Id.* ¶ 15 (internal quotation marks omitted). While our Supreme Court held "property under lease serv[ing] the profitmaking purposes of some private (non-exempt) person or organization" provides a reason why exemption is denied, *id.* ¶ 14, the Court subsequently held in *CAVU Co.* "the exemption provision makes no distinction between private nonprofit and for-profit

9

organizations." 2014-NMSC-029, ¶ 15 (citing *Georgia O'Keefe Museum*, 2003-NMCA-003, ¶ 40). To the extent that these two rules are inconsistent with one another, our Supreme Court's holding in *CAVU Co.* calls into question its previous holding in *Sisters of Charity*.

**{14}** We affirm the district court order.

{15} **IT IS SO ORDERED.**

_____

**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____

**LINDA M. VANZI, Chief Judge**

_____

**DANIEL J. GALLEGOS, Judge**